George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

Michael R. Reese (State Bar No. 206773)
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

Spencer Sheehan (*pro hac vice* to be filed)
*spencer@spencersheehan.com*
**SHEEHAN & ASSOCIATES, P.C.**
60 Cuttermill Road, Suite 409
Great Neck, New York 11021
Telephone: (516) 268-7080
Facsimile: (516) 234-7800

*Counsel for Plaintiffs Dieisha Hodges and*
*Roxanne Colamarino and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIEISHA HODGES *and* ROXANNE COLAMARINO, *individually and on behalf of all others similarly situated,*<br><br>Plaintiffs,<br><br>- against -<br><br>KING'S HAWAIIAN BAKERY WEST, INC.,<br><br>Defendant. | No. 4:21-cv-04541<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Diesha Hodges ("Plaintiff Hodges") and Roxanne Colamarino ("Plaintiff Colamarino") (together, "Plaintiffs"), by their attorneys, allege upon information and belief, except for allegations pertaining to Plaintiffs, which are based on personal knowledge, as follows:

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

1.    King's Hawaiian Bakery West, Inc. ("Defendant") markets, manufactures, labels,

distributes, and sells sweet round rolls based on traditional Portuguese Sweet Bread ("Hawaiian Sweet Rolls" or "Product").

## I.     HISTORY OF HAWAIIAN SWEET ROLLS

2.      Sweetened breads came to Hawaii via the Portuguese immigrants in the mid-to-late 19th century who worked on the pineapple and sugarcane plantations.



3.      Authentic Hawaiian "sweet breads" are valued by consumers because they are made with ingredients grown in Hawaii, such as sugar, pineapple juice, and Hawaiian honey.

4.      The pineapple has long been known as the "King of Fruits" with its top called a "crown."[1]

5.      According to chroniclers of this unique food, a "key ingredient of Hawaiian bread is pineapple juice," which provides a sharp jolt of sweetness.[2]

6.      There was a time when Hawaii was the largest grower of pineapples in the world.

7.      The sugar used in Hawaiian sweet rolls was harvested in Hawaii, which has a unique taste compared to sugar from other regions.

8.      The added honey was also from Hawaii, which had unique floral qualities because of the flowers which only grow in Hawaii.

9.      These three Hawaiian-grown ingredients became inextricably linked with these

---

[1] Matthew J. Reisz, The Pineapple: King of Fruits, by Fran Beauman, The Independent, Jan. 8, 2006.
[2] Hawaiian Bread Recipe

chewy rolls.

10.     The small rolls were baked in a stone *forno* (Portuguese for "oven"), over local kiawe wood.[3]

11.     This food was commercialized and introduced to the "mainland" United States by Defendant and has been known as Hawaiian Rolls ever since.

## II.     CONSUMERS CAN CHOOSE FROM NUMEROUS VERSIONS OF HAWAIIAN SWEET ROLLS

12.     Numerous companies sell Hawaiian sweet bread and even emulate Defendant's trade dress and packaging. (From left to right – Rainbo, Sam's Choice (Walmart), Ball Park Brand, Alpha Packing, Aldi, Sara Lee, Sister Schubert's, Alpine Valley Organic, Safeway Signature Select, and Pillsbury.)



---

[3] Cook's Country, A Hawaiian History of Sweet Breads: They were born in Portuguese homes and raised in Hawaiian bakeries, May 22, 2018.

1
2
3
4
5
6
7
8
9
10
11
12
13



14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





CLASS ACTION COMPLAINT
*Hodges v. King's Hawaiian Bakery West, Inc.*, No. 4:21-cv-04541





CLASS ACTION COMPLAINT
*Hodges v. King's Hawaiian Bakery West, Inc.*, No. 4:21-cv-04541



13.     Despite the many companies which market varieties of Hawaiian sweet rolls, consumers, and Plaintiffs, purchased King's Hawaiian Sweet Rolls based on the representations that they were made in Hawaii.

14.     Plaintiffs did not think that any of the other (i.e., non-King's) Hawaiian sweet rolls were made in Hawaii.

15.     Defendant has zealously sought to prevent other companies from marketing "Hawaiian Rolls" with trade dress that allegedly infringes its trademarked orange floral packaging design.[4]

16.     Defendant did not object to any of the above companies selling Hawaiian rolls because its success has made the term "Hawaiian Roll" a commonly accepted generic name to refer to the version of the Portuguese sweet bread described here.

17.     Defendant's Product is the market leader for Hawaiian sweet breads.

18.     Defendant knows that consumers associate its brand with authentic Hawaiian rolls which are made in Hawaii.

III.     **CONSUMER DEMAND FOR AUTHENTICITY**

19.     Today's consumers are faced with increasing commercialization of products and seek brands that are genuine – Hawaiian sweet breads from Hawaii, Mexican beer from Mexico,

---

[4] *King's Hawaiian Holding Co. v. Southern Bakeries, LLC*, No. 4:20-cv-04283 (S.D. Tex.); *King's Hawaiian Holding Co. v. Pan-O-Gold Baking Co.*, No. 1:17-cv-06443, N.D. Ill.); *King's Hawaiian Holding Co. v. ALDI, Inc.*, No. 2:18-cv-09667 (C.D. Cal.); *King's Hawaiian Bakery Southeast, Inc. v. Aldi, Inc.*, No. 2:15-cv-00212 (N.D. Ga.).

and Italian tomatoes from Italy.

20.    For many consumers, authenticity has overtaken quality as the prevailing purchasing criterion.

21.    Consumers often pay a price premium for what they perceive to be authentic products, particularly those perceived to be authentically associated with a specific place, such as Hawaii for Defendant's Hawaiian Sweet Rolls.

22.    In the present instance, consumers expect Defendant's Hawaiian Sweet Rolls to be made in Hawaii and contain the unique Hawaiian sweet bread ingredients, including honey and pineapple juice.

## IV.    REPRESENTATIONS PRODUCT IS MADE IN HAWAII

23.    The Product's advertisements, marketing, and labeling emphasize its Hawaiian attributes.

24.    However, contrary to the Product's representations and omissions as authentic Hawaiian Rolls, it is not made in Hawaii, lacks ingredients historically associated with this food, and is not made in the traditional methods through a *forno*.

CLASS ACTION COMPLAINT
*Hodges v. King's Hawaiian Bakery West, Inc.*, No. 4:21-cv-04541

25.    The Product's front label representations include "EST. 1950," "KING'S HAWAIIAN," "HILO, HAWAII," "ORIGINAL HAWAIIAN SWEET ROLLS" and Hawaiian trade dress of tropical flowers in orange colors.



26.    Defendant's logo – a three-point crown – is evocative of a pineapple's crown and reflects the connection between pineapple juice and Hawaiian sweet bread.

27.    Reasonable consumers understand that the term "Hawaiian Rolls" by itself, does not denote a roll made in Hawaii any more than a "Moon Pie" can claim to have been baked on the moon.

28.    Moreover, reasonable consumers understand that "King's Hawaiian" refers to the name of the company.

29.    Defendant's front label prominently states "HILO, HAWAII" inside a logo shaped like a (pineapple) crown, "ORIGINAL HAWAIIAN SWEET ROLLS," and "EST. 1950."

8



30.     The impression received by consumers is that since 1950, the Product has been made in Hilo, Hawaii.

31.     Plaintiffs and class members further expect that the Product is made with ingredients from, and associated with, Hawaii, including pineapple juice, sugar, and honey.

32.     On Defendant's website, the impression that the Product is made in Hawaii is furthered by the prominent statement, "FREE standard mainland shipping on orders over $30."[5]



_____

[5] https://kingshawaiian.com/products/rolls-buns-loaves/.

CLASS ACTION COMPLAINT
*Hodges v. King's Hawaiian Bakery West, Inc.*, No. 4:21-cv-04541

1
2
3
4
5
6
7
8
9



10    33.    Elsewhere on the website, Defendant states, "Visit Us Online. Send Aloha anytime!

11 We will gift box and ship bread and other Hawaiian items anywhere in the mainland United States."

12
13



**VISIT US ONLINE**

14

Send Aloha anytime! We will gift box and ship
bread and other Hawaiian items anywhere
in the mainland United States.

15
16
17

18    34.    In the context of Hawaii, "mainland" refers to the continental United States.

19    35.    This is confirmed by the Plant Industry Division of the State of Hawaii, in discussing

20 travel between Hawaii and the contiguous states:[6]

21
22
23
24
25
26
27

28 [6] Traveling from Hawaii to the US Mainland.

State of Hawaii
**Plant Industry Division**

Plant Industry Division    Plant Quarantine Branch ▼    Plant Pest Control Branch

Home » Plant Quarantine Branch » Travel & Shipping Information » Traveling from Hawaii to the U.S. Mainland

**TRAVELING FROM HAWAII TO THE U.S. MAINLAND**

The federal U.S. Department of Agriculture (USDA) regulates plant material transported from Hawaii to the U.S. mainland (not the Hawaii Department of Agriculture). Click on the links below for USDA regulations.

TRAVELING FROM HAWAII TO THE U.S. MAINLAND

The federal U.S. Department of Agriculture (USDA) regulates plant material transported from Hawaii to the U.S. mainland (not the Hawaii Department of Agriculture). Click on the links below for USDA regulations.

36.    The USDA "restrict[s] the entry of many agricultural products from Hawaii into the U.S. mainland."[7]

37.    Hawaiians use the term "mainland" to distinguish their unique culture and values from the contiguous United States.[8]

38.    That Defendant emphasizes it will ship its "bread and other Hawaiian items anywhere in the mainland United States" can only be understood as a representation that the Product is shipped from – and therefore *made* – in Hawaii.

39.    Otherwise, representing that the Product is shipped "anywhere in the mainland United States" makes little sense, because it is redundant and unnecessary to state that a product made in California can be shipped to the other 47 contiguous states.

40.    For at least the past four years, Defendant has promoted its connection with Hawaii,

---

[7] Information for Travelers Coming to the U.S. Mainland from Hawaii.
[8] Kirstina Bolton, 13 things you learn as a Hawaiian when you move to the mainland, Matador Network, July 9, 2014.

CLASS ACTION COMPLAINT
*Hodges v. King's Hawaiian Bakery West, Inc.*, No. 4:21-cv-04541

through a float in the Macy's Thanksgiving Day Parade dubbed "The Aloha Spirit."[9]

41.    The Macy's Thanksgiving Day Parade is one of the most watched programs of the entire year, regularly attracting over 20 million viewers.[10]



42.    Despite the representations as to the Product's origin, the Product is not made in Hawaii but California.

43.    The Product lacks the Hawaiian ingredients associated with original Hawaiian sweet breads – pineapple juice, sugar, and honey – grown and harvested in Hawaii.

44.    Though the fine print of the back of the package discloses the name of the manufacturer and states the place of business, including "the street address, city, State, and ZIP code," this information is not identical to *where* the Product is made:[11]

> Manufactured by:
> King's Hawaiian Bakery West, Inc.
> 19161 Harborgate Way
> Torrance, CA 90501

---

[9] Janis L. Magin, Macy's Thanksgiving Parade will have 'The Aloha Spirit', Pacific Business News, Nov. 22, 2016.
[10] James Hibberd, Macy's Thanksgiving parade tops Grammys in ratings for first time, Entertainment Weekly, Nov. 22, 2018.
[11] 21 C.F.R. § 101.5 (requiring the name and place of business of the manufacturer as opposed to the location *where* a food is made).



45.     Thus, consumers who scrutinize the fine print on the back of the Product will not be told that the Product is *not* made in Hawaii, but only that the company which is responsible for its production has its main office in California.

46.     In conjunction with the Product's packaging and extensive advertisements and marketing, this causes consumers to mistakenly believe that they are purchasing a product with immediate Hawaiian origins.

## V.     RELIANCE AND ECONOMIC INJURY

47.     Plaintiffs sought to purchase Hawaiian sweet breads that were made in Hawaii.

48.     Plaintiffs expected Defendant's Hawaiian sweet breads would have ingredients grown and harvested in Hawaii.

49.     Plaintiffs selected King's Original Hawaiian Sweet Rolls instead of other Hawaiian sweet rolls because they believed that, unlike the other brands of Hawaiian sweet rolls, King's Hawaiian Sweet Rolls were made in Hawaii.

50.     Plaintiffs understood the representations on the front of the label as to "Hilo, Hawaii"

13

to indicate the Product was made there.

51.    Plaintiffs viewed the website representations which also created the impression the Product was made in Hawaii.

52.    Plaintiffs did not expect the Product to be made within the 48 contiguous states because of the Hawaii representations.

53.    Plaintiffs saw and relied on the advertising identified here, which misleadingly emphasizes Hawaii, even though the Product is not made in Hawaii.

54.    Plaintiffs would not have purchased the Product if they knew the representations were false and misleading.

55.    The Product costs more than similar products without misleading representations and but for the misleading representations, would have cost less.

56.    Plaintiffs paid more for the Product than they otherwise would have, and would only have been willing to pay less, or unwilling to purchase it at all, absent the misleading representations.

57.    As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $3.99 for a pack of 12, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

58.    The competing brands of Hawaiian sweet rolls cost less, at an average price of no more than $2.99 for a pack of 12, with roughly the same net weight.

**PARTIES**

59.    Plaintiff Dieisha Hodges is a resident of Oakland, Alameda County, California.

60.    During the relevant statutes of limitations for each cause of action, including between February and March 2021, among other times, Plaintiff Hodges purchased the Product within this district, for personal and household consumption and use, in reliance on the representations that the Product was made in Hawaii.

61.    Plaintiff Hodges purchased the Product at stores including Safeway, 3550 Fruitvale Avenue, Oakland, California 94602.

62.    Plaintiff Hodges purchased the King's Hawaiian Product over other Hawaiian Rolls,

14

1 made by companies like Sara Lee, Franz, and Signature Select, Safeway's private label brand,
2 because she believed they were made in Hawaii with Hawaiian ingredients.

3      63.    Plaintiff Roxanne Colamarino is a resident of Maspeth, Queens County, New York.

4      64.    During the relevant statutes of limitations for each cause of action, including in late
5 December 2020, among other times, Plaintiff Colamarino purchased the Product for personal and
6 household consumption and use, in reliance on the representations that the Product was made in
7 Hawaii.

8      65.    Plaintiff Colamarino purchased the Product at stores including but not limited to Stop
9 & Shop, 71-74 Grand Avenue, New York 11378.

10      66.    Plaintiff Colamarino purchased the King's Hawaiian Product over other Hawaiian
11 Rolls, including those made by companies like Sara Lee, Ballpark, L'Oven Fresh (Aldi private label)
12 and Sam's Club, because she believed they were made in Hawaii with Hawaiian ingredients.

13      67.    Plaintiffs prefer to consume foods which have enduring and authentic connections to
14 a place associated with them, such as Italian tomatoes and Florida oranges.

15      68.    Plaintiffs and reasonable consumers have such preferences because they recognize
16 the value of certain products to specific geographic areas and choose to reward this authenticity with
17 their purchases and money.

18      69.    Plaintiffs expected the Product would be made in Hawaii because that is what the
19 label said and/or implied.

20      70.    Defendant King's Hawaiian Bakery West, Inc., is a California corporation with a
21 principal place of business in Torrance, California, Los Angeles County.

22      71.    Defendant is the leader in the production of Hawaiian sweet rolls.

23      72.    These rolls are used for various purposes – before meals, sliders (mini-burgers), and
24 dessert.

25      73.    Defendant operates multiple manufacturing locations – on the East and West Coasts
26 – to meet the high demand for its Product in the United States.

27                        **JURISDICTION AND VENUE**

28      74.    This Court has original subject matter jurisdiction over this putative class action

pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).

75.    Plaintiff Colamarino is a citizen of Maspeth, Queens County, New York.

76.    Defendant is a California corporation with its principal place of business in Torrance, California, Los Angeles County.

77.    Diversity exists because Plaintiff Colamarino and Defendant are citizens of different states.

78.    Upon information and belief, sales of the Product and any available statutory and other monetary damages exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

79.    Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred within this District, including the purchases of Plaintiff Hodges and her awareness of the representations and omissions at issue.

80.    This Court has personal jurisdiction over Defendant because it is headquartered within California.

**Intradistrict Assignment**

81.    Pursuant to Civil Local Rule 3-2(c)-(d), a substantial part of the events giving rise to the claims arose in Alameda County, and this action should be assigned to the Oakland Division or the San Francisco Division.

**CLASS ACTION ALLEGATIONS**

82.    Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3).

83.    Plaintiffs seek to represent the following two classes (together, the "Class"):

All persons residing in California who purchased the Product for personal or household consumption and use since June 3, 2015 ("the California Class"); and

All persons residing in New York who purchased the Product for personal or household consumption and use since June 3, 2015 ("the New York Class").

84.    Excluded from the Class are: (a) Defendant, Defendant's board members, executive-

16

level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

85.    The Class consists of hundreds of thousands of persons, and joinder is impracticable.

86.    Common questions of law or fact predominate and include whether Defendant's representations and omissions were and are misleading and if plaintiffs and Class members are entitled to injunctive relief and damages.

87.    Plaintiffs' claims and bases for relief are typical of those of other Class members because all were subjected to the same unfair and deceptive representations and omissions.

88.    Plaintiffs are adequate Class representatives. Plaintiffs' interests do not conflict with the interests of other Class members. Plaintiffs have selected competent counsel that are experienced in class action and other complex litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

89.    Certification is appropriate under Rule 23(b)(3) because the predominance and superiority requirements are met.

90.    Common questions predominate over individual questions because the focus of Plaintiffs' claims is on Defendant's practices.

91.    A class action is superior to other available methods for adjudication of this controversy, since individual actions would risk inconsistent results, be repetitive, and are impractical to justify, as the claims are modest relative to the scope of the harm.

92.    Certification is appropriate under Rule 23(b)(2) to the extent the Class seeks declaratory and injunctive relief because Defendant has acted or refused to act on grounds that apply generally to the Class.

93.    Plaintiffs anticipate this Court can direct notice to the Class by publication in major media outlets and the Internet.

CLASS ACTION COMPLAINT
*Hodges v. King's Hawaiian Bakery West, Inc.*, No. 4:21-cv-04541

**CLAIMS FOR RELIEF**

**FIRST CLAIM**
**Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.***
**Unlawful Conduct Prong**
**By Plaintiff Hodges on Behalf of the California Class**

94.     Plaintiff Hodges incorporates all preceding paragraphs.

95.     California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), prohibits any "unlawful, unfair or fraudulent business act or practice."

96.     Defendant's representations and omissions are "unlawful" because they violate the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including:

      1.     21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material";

      2.     21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement;

97.     Defendant's conduct is "unlawful" because it violates the California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL"), and California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA").

98.     Defendant's conduct violates California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code § 109875 *et seq.* ("Sherman Law"), including:

      1.     Section 110100 (adopting all FDA regulations as state regulations);

      2.     Section 110290 ("In determining whether the labeling or advertisement of a food . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account.  The extent that the labeling or advertising fails to reveal facts concerning the food . . . or consequences of customary use of the food . . .

18

1    shall also be considered.");

2    3.    Section 110390 ("It is unlawful for any person to disseminate any false

3          advertisement of any food . . . . An advertisement is false if it is false or

4          misleading in any particular.");

5    4.    Section 110395 ("It is unlawful for any person to manufacture, sell, deliver,

6          hold, or offer for sale any food . . . that is falsely advertised.");

7    5.    Section 110398 ("It is unlawful for any person to advertise any food, drug,

8          device, or cosmetic that is adulterated or misbranded.");

9    6.    Section 110400 ("It is unlawful for any person to receive in commerce any

10         food . . . that is falsely advertised or to deliver or proffer for delivery any such

11         food . . . ."); and

12   7.    Section 110660 ("Any food is misbranded if its labeling is false or misleading

13         in any particular.").

14   99.    Each of the challenged statements and representations made and actions taken by

15   Defendant violates the FFDCA, FAL, and Sherman Law, and therefore violates the "unlawful"

16   prong of the UCL.

17   100.    Defendant leveraged its deception to induce Plaintiff Hodges and the California

18   Class members to purchase a product that was of lesser value and quality than advertised.

19   101.    Defendant's deceptive advertising caused Plaintiff Hodges and the California Class

20   members to suffer injury-in-fact and to lose money or property.

21   102.    Defendant's actions denied Plaintiff Hodges and the California Class members the

22   benefit of the bargain when they decided to purchase the Product instead of other products that are

23   less expensive and are also not made in Hawaii.

24   103.    Had Plaintiff Hodges and the California Class members been aware of Defendant's

25   false and misleading advertising, they would not have purchased the Product at all, or would have

26   paid less than they did.

27   104.    In accordance with California Business & Professions Code section 17203, Plaintiff

28   Hodges seeks an order enjoining Defendant from continuing to conduct business through unlawful,

19

1    unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

2         105.    Plaintiff Hodges seeks an order for the disgorgement and restitution of all monies

3    from the sale of the Product that was unjustly acquired through such acts.

4         106.    Therefore, Plaintiff Hodges prays for relief as set forth below.

5    

**SECOND CLAIM**

**Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.***

6    **Unfair and Fraudulent Conduct Prongs**

**By Plaintiff Hodges on Behalf of the California Class**

7    

8         107.    Plaintiff Hodges incorporates all preceding paragraphs.

9         108.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."

10         109.    The false and misleading representations of the Product constitutes "unfair" business

11    acts and practices because they are immoral, unscrupulous, and offend public policy.

12         110.    The gravity of the conduct at issue outweighs any conceivable benefit.

13         111.    The representations and omissions constitute "fraudulent" business acts and practices

14    because they are false and misleading to Plaintiff Hodges and the California Class members.

15         112.    Defendant's representations and omissions deceived Plaintiff Hodges and the

16    California Class members about the Product's origins and the presence of ingredients made and

17    grown in Hawaii.

18         113.    Defendant knew or reasonably should have known that its statements and omissions

19    concerning the Product were likely to deceive consumers.

20         114.    In accordance with California Business & Professions Code section 17203, Plaintiff

21    Hodges seeks an order enjoining Defendant from continuing to conduct business through unlawful,

22    unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

23         115.    Plaintiff Hodges seeks an order for the disgorgement and restitution of all monies

24    from the sale of the Product that was unjustly acquired through acts of unlawful, unfair and/or

25    fraudulent competition.

26         116.    Therefore, Plaintiff Hodges prays for relief as set forth below.

27

28

20

### THIRD CLAIM
**Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.***
**By Plaintiff Hodges on Behalf of the California Class**

117.    Plaintiff Hodges incorporates all preceding paragraphs.

118.    The FAL prohibits "mak[ing] any false or misleading advertising claim."

119.    Defendant makes "false [and] misleading advertising claim[s]" by deceiving consumers as to the immediate origins of the Product, namely, that it was made in Hawaii and with ingredients made and/or grown in Hawaii, such as sugar, honey, and/or pineapple juice.

120.    In reliance on these false and misleading advertising claims, Plaintiff Hodges and the California Class members purchased and consumed the Product without the knowledge that it was not made in Hawaii.

121.    Defendant knew or should have known that its representations and omissions were likely to deceive consumers.

122.    As a result, Plaintiff Hodges and the California Class members seek injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

123.    Therefore, Plaintiff Hodges prays for relief as set forth below.

### FOURTH CLAIM
**Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.***
**By Plaintiff Hodges on Behalf of the California Class**

124.    Plaintiff Hodges incorporates all preceding paragraphs.

125.    The CLRA adopts a statutory scheme prohibiting deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

126.    Defendant's policies, acts, and practices were designed to, and did, result in the purchase and use of the Product primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

    1.    Section 1770(a)(2), which prohibits representing that goods have a particular composition or contents that they do not have;

    2.    Section 1770(a)(5), which prohibits representing that goods have

21

characteristics, uses, benefits, or ingredients that they do not have;

3.   Section 1770(a)(7), which prohibits representing that goods are of a particular standard, quality, or grade if they are of another;

4.   Section 1770(a)(9), which prohibits advertising goods with intent not to sell them as advertised; and

5.   Section 1770(a)(16), which prohibits representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

127.   Plaintiff Hodges requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to California Civil Code section 1780.

128.   If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff Hodges and the California Class members will continue to suffer harm.

129.   Pursuant to the provisions of California Civil Code section 1782(a), Plaintiff Hodges sent a CLRA Notice to Defendant's principal place of business and its registered agent in California on March 22, 2021, via co-counsel Sheehan & Associates, P.C., via certified mail, return receipt requested.

130.   The CLRA Notices detailed the violations of the CLRA, demanded correction of these violations, and provided the opportunity to correct these business practices.

131.   On March 26, 2021, the CLRA Notices were signed for by Defendant.

132.   Attorneys representing Defendant contacted Sheehan & Associates, P.C., in a letter dated April 15, 2021.

133.   Defendant denied any violations and refused to correct any of the challenged practices.

134.   Plaintiff Hodges seeks injunctive relief, restitution, and monetary damages for Defendant's violations of the CLRA.

135.   Therefore, Plaintiff Hodges prays for relief as set forth below.

CLASS ACTION COMPLAINT
*Hodges v. King's Hawaiian Bakery West, Inc.*, No. 4:21-cv-04541

1

### FIFTH CLAIM
**Violations of New York General Business Law Sections 349 and 350**
**By Plaintiff Colamarino on Behalf of the New York Class**

2

3        136.    Plaintiff Colamarino incorporates all preceding paragraphs.

4        137.    New York General Business Law sections 349 and 350 prohibit false, deceptive, and

5    misleading acts, omissions, and representations.

6        138.    Plaintiff Colamarino and the New York Class members desired to purchase Hawaiian

7    Sweet Rolls that were made in Hawaii with ingredients made and/or grown in Hawaii, such as sugar,

8    honey, and/or pineapple juice.

9        139.    Defendant's acts and omissions are not unique to the parties and have a broader

10    impact on the public.

11        140.    Defendant misrepresented the Product through its statements, omissions, and actions.

12        141.    Plaintiff Colamarino and the New York Class members would not have purchased

13    the Product or paid as much if the true facts had been known, therefore suffering damages.

14        142.    Therefore, Plaintiff Colamarino prays for relief as set forth below.

15

### SIXTH CLAIM
**Unjust Enrichment**
**By Plaintiffs on Behalf of the California Class and the New York Class**

16

17        143.    Plaintiffs incorporate all preceding paragraphs.

18        144.    Defendant obtained benefits and monies because the Product was not as represented

19    and expected, to the detriment and impoverishment of Plaintiffs and the Class members, who seek

20    restitution and disgorgement of inequitably obtained profits.

21        145.    Therefore, Plaintiffs pray for relief as set forth below.

22

### PRAYER FOR RELIEF

23        WHEREFORE, Plaintiffs, on behalf of themselves and members of the proposed Class, pray

24    for judgment and relief on all of the legal claims as follows:

25        A.    Certification of the Class, certifying Plaintiffs as representatives of the Class, and

26            designating Plaintiffs' counsel as counsel for the Class;

27        B.    A declaration that Defendant is financially responsible for notifying the Class

28            members of the pendency of this suit;

1  C.  A declaration that Defendant has committed the violations alleged herein;

2  D.  For any and all injunctive relief the Court deems appropriate;

3  E.  For monetary damages, including but not limited to any compensatory, incidental, or

4  consequential damages, in accordance with applicable law;

5  F.  For any and all equitable monetary relief the Court deems appropriate;

6  G.  For punitive damages;

7  H.  For attorneys' fees;

8  I.  For costs of suit incurred;

9  J.  For pre- and post-judgment interest at the legal rate on the foregoing sums; and

10  K.  For such further relief as this Court may deem just and proper.

11  <u>**DEMAND FOR JURY TRIAL**</u>

12  Plaintiffs demand a jury trial on all causes of action so triable.

13

14  Date: June 11, 2021                      Respectfully submitted,

15                                By:  */s/ George V. Granade*

16                                George V. Granade (State Bar No. 316050)
                                  *ggranade@reesellp.com*
17                                **REESE LLP**
                                  8484 Wilshire Boulevard, Suite 515
18                                Los Angeles, California 90211
                                  Telephone: (310) 393-0070
19                                Facsimile: (212) 253-4272

20                                Michael R. Reese (State Bar No. 206773)
                                  **REESE LLP**
21                                100 West 93rd Street, 16th Floor
                                  New York, New York 10025
22                                Telephone: (212) 643-0500
                                  Facsimile: (212) 253-4272

23                                Spencer Sheehan (*pro hac vice* to be filed)
                                  *spencer@spencersheehan.com*
24                                **SHEEHAN & ASSOCIATES, P.C.**
                                  60 Cuttermill Road, Suite 409
25                                Great Neck, New York 11021
                                  Telephone: (516) 268-7080
26                                Facsimile: (516) 234-7800

27                                *Counsel for Plaintiffs Dieisha Hodges and*
                                  *Roxanne Colamarino and the Proposed Class*
28

24