1    George V. Granade (State Bar No. 316050)
     *ggranade@reesellp.com*
2    **REESE LLP**
     8484 Wilshire Boulevard, Suite 515
3    Los Angeles, California 90211
     Telephone: (310) 393-0070
4    Facsimile: (212) 253-4272

5    Michael R. Reese (State Bar No. 206773)
     *mreese@reesellp.com*
6    **REESE LLP**
     100 West 93rd Street, 16th Floor
7    New York, New York 10025
     Telephone: (212) 643-0500
8    Facsimile: (212) 253-4272

9    Spencer Sheehan (admitted *pro hac vice*)
     *spencer@spencersheehan.com*
10   **SHEEHAN & ASSOCIATES, P.C.**
     60 Cuttermill Road, Suite 409
11   Great Neck, New York 11021
     Telephone: (516) 268-7080
12   Facsimile: (516) 234-7800

13   *Counsel for Plaintiffs Dieisha Hodges and*
     *Roxanne Colamarino and the Proposed Class*
14

15                **UNITED STATES DISTRICT COURT**

16             **NORTHERN DISTRICT OF CALIFORNIA**

17                      **OAKLAND DIVISION**

18
19   DIEISHA HODGES *and* ROXANNE              Case No. 4:21-cv-04541-PJH
     COLAMARINO, *individually and on behalf*
20   *of all others similarly situated*,         **PLAINTIFFS DIEISHA HODGES' AND**
                                                  **ROXANNE COLAMARINO'S**
                         Plaintiffs,             **MEMORANDUM OF POINTS AND**
21                                               **AUTHORITIES IN OPPOSITION TO**
           v.                                    **DEFENDANT KING'S HAWAIIAN**
22                                               **BAKERY WEST, INC.'S MOTION TO**
     KING'S HAWAIIAN BAKERY WEST,               **DISMISS PLAINTIFFS' COMPLAINT**
23   INC.,
                                                 Date: October 28, 2021
24                       Defendant.             Time: 1:30 p.m.
                                                 Place: Courtroom 3, 3rd Floor
25                                               Judge: Honorable Phyllis J. Hamilton
26

27

28

---

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................... ii

INTRODUCTION ................................................................................................... 1

STATEMENT OF THE ISSUES TO BE DECIDED ............................................. 1

STATEMENT OF RELEVANT FACTS ............................................................... 2

LEGAL STANDARDS ........................................................................................... 3

ARGUMENT .......................................................................................................... 4

I.      The Labeling of the Product Is Likely to Mislead a Reasonable Consumer ...................... 4

        A.      The Reasonable Consumer Standard ................................................ 4

        B.      Defendant Disregards Context in Favor of Rigid Factor-Based Analysis .............. 5

                i.      Context Requires Evaluating the Product among Its Many "Copycats" ...................... 6

                ii.     The Front Label Representations at Issue Distinguish Defendant's Product from Otherwise Identical Competitors .......................... 7

                iii.    Plaintiffs' Theory Does Not Rely on "Evocative" Hawaiian Imagery ...................... 10

                iv.     Defendant's Website and Float Representations Further the Deception Created by the Front Label ...................... 10

        C.      The Back Label Disclosure Fails to Cure the Misleading Front Label Claims ...................... 11

        D.      Plaintiffs' Expectations for the Product Were Reasonable ................... 14

II.     The Complaint Satisfies Federal Rule of Civil Procedure 9(b) ........................ 15

III.    The Complaint States a Claim for Unjust Enrichment .................................... 19

IV.     Plaintiff Hodges Has Given Adequate Notice under the CLRA ........................ 20

V.      Plaintiffs Have Standing to Seek Injunctive Relief ........................................ 23

VI.     The Court Should Not Deny Leave to Amend ................................................. 24

CONCLUSION ....................................................................................................... 25

1

# TABLE OF AUTHORITIES

2  CASES

3  *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-WHO,
   2013 WL 5407039 (N.D. Cal. Sept. 25, 2013) ........................................................... 15, 18

4

   *Ariix, LLC v. NutriSearch Corp.*,
5    985 F.3d 1107 (9th Cir. 2021) ............................................................. 3, 14, 15, 17

6  *Ashcroft v. Iqbal*,
     556 U.S. 662 (2009) ....................................................................................... 3

7

   *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-cv-04387-PJH,
8    2011 WL 2111796 (N.D. Cal. May 26, 2011) .................................................. 17, 18

9  *Astiana v. Hain Celestial Grp., Inc.*,
     783 F.3d 753 (9th Cir. 2015) .......................................................................... 20

10

11  *Bell Atl. Corp. v. Twombly*,
      550 U.S. 544 (2007) ....................................................................................... 3

12  *Bowring v. Sapporo U.S.A., Inc.*,
      234 F. Supp. 3d 386 (E.D.N.Y. 2017) ........................................................ 12, 13

13

14  *Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027-BLF,
      2017 WL 3838453 (N.D. Cal. Sept. 1, 2017) ...................................................... 6

15  *Chacanaca v. Quaker Oats Co.*,
      752 F. Supp. 2d 1111 (N.D. Cal. 2010) ............................................................ 15

16

17  *Cheslow v. Ghirardelli Chocolate Co.*,
      445 F. Supp. 3d 8 (N.D. Cal. 2020) ................................................................. 13

18  *Colucci v. ZonePerfect Nutrition Co.*, No. 12-2907-SC,
      2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) .................................................... 22

19

20  *Culver v. Unilever United States, Inc.*, No. 19-cv-09263-GW-RAO,
      2021 WL 2943937 (C.D. Cal. June 14, 2021) .................................................... 8, 9

21  *Davidson v. Kimberly-Clark Corp.*,
      889 F.3d 956 (9th Cir. 2018) ...................................................................... 23, 24

22

23  *de Dios Rodriguez v. Ole Mexican Foods Inc.*, No. 20-cv-02324-JGB-SP,
      2021 WL 1731604 (C.D. Cal. Apr. 22, 2021) .................................................... 5, 12

24  *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-cv-04427-NGG-ST,
      2017 WL 5201079 (E.D.N.Y. Nov. 9, 2017) ...................................................... 20

25

26  *Dumas v. Diageo PLC*, No. 15-cv-1681-BTM-BLM,
      2016 WL 1367511 (S.D. Cal. Apr. 6, 2016) ...................................................... 10, 12

27  *Ehret v. Uber Techs., Inc.*,
      68 F. Supp. 3d 1121 (N.D. Cal. 2014) .............................................................. 4

28

*Eminence Cap., LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ........................................................................... 25

*Evans v. DSW, Inc.*, No. 16-cv-03791-JGB-SP,
    2017 WL 7058233 (C.D. Cal. Feb. 2, 2017)......................................................... 5

*Foman v. Davis*,
    371 U.S. 178 (1962)........................................................................................... 25

*Forschner Group, Inc. v. Arrow Trading Co., Inc.*,
    30 F.3d 348 (2d Cir. 1994).................................................................................. 9

*Gasser v. Kiss My Face, LLC*, No. 17-cv-01675-JSC,
    2017 WL 4773426 (N.D. Cal. Oct. 23, 2017)..................................................... 17

*Grimm v. APN Inc.*, No. 8:17-cv-00356-JVS-JCG,
    2017 WL 6398148 (C.D. Cal. Aug. 31, 2017) .............................................. 20, 21

*Haas v. Travelex Ins. Servs. Inc.*, No. 2:20-cv-06171-ODW-PLA,
    2021 WL 3682309 (C.D. Cal. Aug. 19, 2021)..................................................... 24

*Hall v. Diamond Foods, Inc.*, No. 14-cv-02148-MMC,
    2014 WL 5364122 (N.D. Cal. Oct. 21, 2014)..................................................... 16

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F. Supp. 3d 453 (S.D.N.Y. 2020) .................................................. 5, 8, 10, 11

*In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, No. MDL 13-2438 PSG PLA,
    2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) ..................................................... 15

*In re ConAgra Foods Inc.*,
    908 F. Supp. 2d 1090 (C.D. Cal. 2012) .............................................................. 18

*In re Easysaver Rewards Litig.*,
    737 F. Supp. 2d 1159 (S.D. Cal. 2010) .............................................................. 22

*In re Fluidmaster, Inc.*,
    149 F. Supp. 3d 940 (N.D. Ill. 2016) ................................................................. 23

*Jou v. Kimberly-Clark Corp.*, No. 13-cv-03075-JSC,
    2013 WL 6491158 (N.D. Cal. Dec. 10, 2013)..................................................... 12

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ................................................................... 3, 15, 17

*LeMoon v. California Forensic Med. Grp., Inc.*, No. 20-cv-02552-PJH,
    2021 WL 2817165 (N.D. Cal. July 7, 2021)....................................................... 25

*Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST,
    2015 WL 1248027 (N.D. Cal. Mar. 18, 2015)............................................... 23, 24

*Lima v. Gateway, Inc.*,
    710 F. Supp. 2d 1000 (C.D. Cal. 2010) ............................................................... 6

*Mantikas v. Kellogg Co.*,
   910 F.3d 633 (2d Cir. 2018).................................................................................. 4, 13

*Marty v. Anheuser-Busch Cos., LLC*,
   43 F. Supp. 3d 1333 (S.D. Fla. 2014) ........................................................................ 6

*McCrary v. Elations Co., LLC*, No. 13-cv-00242-JGB-OP,
   2013 WL 6402217 (C.D. Cal. Apr. 24, 2013) ............................................................ 4

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 20-cv-09077
   2021 WL 3524047 (N.D. Cal. Aug. 6, 2021) ........................................................... 16

*Moore v. Mars Petcare US, Inc.*,
   966 F.3d 1007 (9th Cir. 2020) ................................................................................... 3

*Morgan v. AT&T Wireless Servs., Inc.*,
   99 Cal. Rptr. 3d 768 (2009) .................................................................................... 23

*Nelson v. MillerCoors, LLC*,
   246 F. Supp. 3d 666 (E.D.N.Y. 2017) ............................................................... 12, 13

*Oxina v. Lands' End, Inc.*, No. 14-CV-2577-MMA NLS,
   2015 WL 4272058 (S.D. Cal. June 19, 2015)........................................................ 23

*Peacock v. Pabst Brewing Co., LLC*,
   491 F. Supp. 3d 713 (E.D. Cal. 2020)..................................................................... 14

*Prescott v. Bayer HealthCare LLC*, No. 20-cv-00102-NC,
   2020 WL 4430958 (N.D. Cal. July 31, 2020).......................................................... 23

*Reed v. Gen. Mills, Inc.*, No. 19-cv-00005-JCC,
   2019 WL 2475706 (W.D. Wash. June 13, 2019) ...................................................... 6

*Sandoval v. PharmaCare US, Inc.*,
   145 F. Supp. 3d 986 (S.D. Cal. 2015)................................................................. 4, 15

*Schreiber Distributing Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986) ................................................................................. 19

*Shalikar v. Asahi Beer U.S.A., Inc.*, No. 17-cv-02713-JAK-JPR,
   2017 WL 9362139 (C.D. Cal. Oct. 16, 2017)......................................... 5, 8, 12, 14

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ................................................................................. 11

*Stickrath v. Globalstar, Inc.*,
   527 F. Supp. 2d 992 (N.D. Cal. 2007).............................................................. 21, 22

*Strumlauf v. Starbucks Corp.*,
   192 F. Supp. 3d 1025 (N.D. Cal. 2016) .............................................................. 18, 19

*Tribendis v. Life Care Centers of Am., Inc.*, No. 2:14-cv-02765-DMG-PJW,
   2014 WL 12639322 (C.D. Cal. Sept. 19, 2014) ..................................................... 22

*Tucker v. Post Consumer Brands, LLC*, No. 19-cv-03993-YGR,
    2020 WL 1929368 (N.D. Cal. Apr. 21, 2020) ........................................................ 24

*Vassigh v. Bai Brands LLC*, No. 14-cv-05127-HSG,
    2015 WL 4238886 (N.D. Cal. July 13, 2015) ....................................................... 21

*Von Grabe v. Sprint PCS*,
    312 F. Supp. 2d 1285 (S.D. Cal. 2003) ............................................................... 22

*Warner v. StarKist Co.*, No. 1:18-cv-00406-GLS-ATB,
    2019 WL 1332573 (N.D.N.Y. Mar. 25, 2019) ....................................................... 20

*Wasser v. All Mkt., Inc.*, No. 16-cv-21238,
    2017 WL 11139701 (S.D. Fla. Nov. 13, 2017) ...................................................... 8

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ...................................................................... passim

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ............................................................... 4

**STATUTES**

CAL. CIV. CODE § 1770 ........................................................................... 21, 22

CAL. CIV. CODE § 1782 ............................................................................... 21

California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.* ..................... passim

California's False Advertising Law, CAL. BUS. & PROF. CODE § 17500 *et seq.* ....................... 3

California's Unfair Competition Law, CAL. BUS. & PROF CODE § 17200 *et seq.* ....................... 3

N.Y. GEN. BUS. LAW § 349 ......................................................................... 3, 20

N.Y. GEN. BUS. LAW § 350 ......................................................................... 3, 20

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8 ................................................................... 20

Federal Rule of Civil Procedure 12 .................................................................. 3

Federal Rule of Civil Procedure 15 .............................................................. 24, 25

U.S. CONST. art. III ............................................................................... 2, 24

1    Plaintiffs Dieisha Hodges and Roxanne Colamarino (together, "Plaintiffs") respectfully

2    submit this memorandum of points and authorities in opposition to the motion to dismiss their

3    Class Action Complaint, ECF No. 1, filed by Defendant King's Hawaiian Bakery West, Inc.

4    ("Defendant" or "King's Hawaiian").  *See* Def.'s Notice Mot. & Mot. Dismiss Pls.' Compl., ECF

5    No. 17 ("Mot.").

## INTRODUCTION

7    This is a straightforward case of deceptive advertising.  King's Hawaiian misleads

8    consumers into believing its Original Hawaiian Sweet Rolls (the "Product") are authentic

9    Hawaiian sweet rolls that are in fact made in Hawaii with Hawaiian ingredients, by prominently

10   labeling them on the front of the packaging with representations including "HILO, HAWAII,"

11   "EST. 1950," "ORIGINAL HAWAIIAN SWEET ROLLS," "KING'S HAWAIIAN," tropical

12   flowers in shades of orange, and a three-point pineapple crown.

13   Unbeknownst to Plaintiffs and other consumers, who paid a premium price for what they

14   believed, based on the Product labels, were authentic Hawaiian Products made with ingredients

15   from Hawaii, the Original Hawaiian Sweet Rolls are not in fact made in Hawaii. Rather, they are

16   made in California.  Plaintiffs' case addresses Defendant's betrayal of consumers' trust, seeking

17   damages for the price premium Plaintiffs and other consumers paid for the Products due to

18   Defendant's misrepresentations and an injunction to put a stop to its ongoing deceptive practices.

19   As detailed below, Plaintiffs' claims are well supported by facts which the Court should

20   accept as the truth on this motion, and they are more than plausible.  Defendant's arguments for

21   dismissal as a matter of law are without merit, and the Court should deny its motion in full.

## STATEMENT OF THE ISSUES TO BE DECIDED

23   1.    Does Plaintiffs' Complaint plausibly allege the front label representations on

24   Defendant's Original Hawaiian Sweet Rolls, including "HILO, HAWAII," "EST. 1950,"

25   "ORIGINAL HAWAIIAN SWEET ROLLS," "KING'S HAWAIIAN," tropical flowers in shades

26   of orange, and a three-point pineapple crown, coupled with website promises of free "mainland

27   shipping," and viewed in the context of numerous virtually identical competing products, are likely

28   to deceive reasonable consumers with respect to the immediate origin of the Products?

2.      Does the Complaint satisfy Federal Rule of Civil Procedure 9(b)?

3.      Have Plaintiffs sufficiently alleged an alternative claim for unjust enrichment?

4.      Did Ms. Hodges' pre-suit letter sufficiently notify Defendant of her claims under California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.* ("CLRA")?

5.      Do Plaintiffs have Article III standing to pursue injunctive relief?

6.      If the Court grants any part of Defendant's motion, should it grant leave to amend?

## STATEMENT OF RELEVANT FACTS

Defendant prominently represents its Original Hawaiian Sweet Rolls as being made in Hilo, Hawaii, since 1950 using front-label representations including "EST. 1950," "KING'S HAWAIIAN," "HILO, HAWAII," "ORIGINAL HAWAIIAN SWEET ROLLS," tropical flowers in shades of orange, and a three-point pineapple crown. Compl. ¶¶ 25-26, 29. Further suggesting the Product is in fact made in Hawaii, Defendant's website emphasizes its free shipping to the "mainland," the term Hawaiians use to refer to the contiguous 48 states. *Id.* at ¶¶ 32-39.

Unfortunately for consumers, the Product is not made in Hawaii but in California. Compl. ¶ 42. Furthermore, the Product lacks ingredients traditionally associated with this food, namely, Hawaiian sugar, pineapple juice, and honey, and it is not made in the traditional methods. *Id.* at ¶¶ 2-10, 24, 43. The market for Hawaiian sweet rolls is fierce, as dozens of companies offer identical products, which all bear the same name and description. *Id.* at ¶ 12. So intense is the competition that Defendant has sued at least four purveyors of this sweet, chewy roll within the past six years. *Id.* at ¶ 15 n.4. According to Defendant, these "copycats" were not "authentically" "Hawaiian" and infringed upon its distinctive orange floral trade dress. *Id.* at ¶ 15.

Plaintiffs purchased Defendant's Original Hawaiian Sweet Rolls, which it represented as being made in Hawaii since 1950. Compl. ¶¶ 60-61, 64-65. Plaintiffs selected from at least ten other brands of Hawaiian Sweet Rolls, all bearing an orange, floral trade dress and the word "Hawaii." *See id.* at ¶¶ 12, 62, 66. Plaintiffs saw Defendant's labeling and website claims, and the lower-priced competitor Hawaiian sweet rolls, and purchased the King's Hawaiian version, expecting a level of authenticity they failed to receive. *Id.* at ¶¶ 47-53, 60, 62, 64, 66-69. Had Plaintiffs known the truth, they would not have bought the Product, would have paid less for it, or

1  would have purchased one of the numerous, less costly, competitors. *Id.* at ¶¶ 54-58.  As a result

2  of Defendant'ss misleading representations, the Product is sold at a premium price, as compared

3  to similar competing products represented in a non-misleading way, and its value was materially

4  less than its value as represented by Defendant. *Id.* at ¶¶ 57-58.

5        To address Defendant's deceptive conduct, Plaintiffs bring claims for violation of

6  California's Unfair Competition Law, CAL. BUS. & PROF CODE § 17200 *et seq.* ("UCL") (unlawful,

7  unfair, and fraudulent prongs), California's False Advertising Law, CAL. BUS. & PROF. CODE §

8  17500 *et seq.* ("FAL"), the CLRA, and New York General Business Law sections 349 and 350, as

9  well as for unjust enrichment, Compl. ¶¶ 94-145, on behalf of two proposed classes of similarly

10  situated consumers from California and New York who purchased the Product, *id.* at ¶ 83.  They

11  seek monetary and injunctive relief. *Id.* at p. 23-24 (Prayer for Relief ¶¶ D-K).

12                              **LEGAL STANDARDS**

13        Defendant moves to dismiss for failure to state a claim pursuant to Federal Rule of Civil

14  Procedure 12(b)(6).  To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to

15  state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

16  (2007).  The Court must "accept all factual allegations in the complaint as true and construe the

17  pleadings in the light most favorable to the nonmoving party," *Ariix, LLC v. NutriSearch Corp.*,

18  985 F.3d 1107, 1114 (9th Cir. 2021), and should "draw all reasonable inferences in favor of the

19  plaintiff," *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018).  "The

20  plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

21  possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

22        Defendant also seeks dismissal for failure to plead fraud with particularity as required

23  under Federal Rule of Civil Procedure 9(b).  Mot. 16-18.  To meet Rule 9(b), "a pleading must

24  identify the who, what, when, where, and how of the misconduct charged, as well as what is false

25  or misleading about the purportedly fraudulent statement, and why it is false."  *Moore v. Mars*

26  *Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020).  "Rule 9(b) is satisfied if the allegations of

27  fraud are 'specific enough to give defendants notice of the particular misconduct . . . so that they

28  can defend against the charge and not just deny that they have done anything wrong.'"  *Sandoval*

1  *v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 997 (S.D. Cal. 2015).

2  <u>**ARGUMENT**</u>

3  **I.     The Labeling of the Product Is Likely to Mislead a Reasonable Consumer**

4       **A.     The Reasonable Consumer Standard**

5       The consumer protection statutes of California and New York prohibit false or misleading

6  conduct in trade or commerce.  Courts apply the "reasonable consumer" standard to determine

7  whether a representation is deceptive under these laws.  *Mantikas v. Kellogg Co.*, 910 F.3d 633,

8  636 (2d Cir. 2018); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).   A

9  reasonable consumer is "neither the most vigilant and suspicious of advertising claims nor the

10  most unwary and unsophisticated, but instead is 'the ordinary consumer within the target

11  population.'"  *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1137 (N.D. Cal. 2014).  At this

12  juncture, dismissal is appropriate only if, "[v]iewing the facts in the light most favorable to

13  plaintiff," it is "impossible for the plaintiff to prove that a reasonable consumer was likely to be

14  deceived." *Yumul v. Smart Balance, Inc*., 733 F. Supp. 2d 1117, 1129 (C.D. Cal. 2010).  Whether

15  a claim is likely to deceive a reasonable consumer is almost always a fact question not appropriate

16  for resolution on a motion to dismiss.  *Williams*, 552 F.3d at 938-39.

17       As such, and as Defendant admits, dismissal of false advertising claims is proper only in a

18  "rare situation," where "it [is] impossible for the plaintiff to prove that a reasonable consumer was

19  likely to be deceived."  *Williams*, 552 F.3d at 939; *McCrary v. Elations Co., LLC*, No. 13-cv-

20  00242-JGB-OP, 2013 WL 6402217, at *6 (C.D. Cal. Apr. 24, 2013) (denying motion to dismiss

21  on grounds that defendant's "advertising claims [did] not make it 'impossible for the plaintiff to

22  prove that a reasonable consumer was likely to be deceived'").  In the Ninth Circuit, the principle

23  is well established that a representation need not be *literally* false or *expressly* stated to be

24  deceptive. *Williams*, 552 F.3d at 938 (stating that California's consumer protection laws "prohibit

25  'not only advertising which is false, but also advertising which [,] although true, is either actually

26  misleading or which has a capacity, likelihood or tendency to deceive or confuse the public'").

27       How a consumer interprets particular representations on the Product labels in the context

28  of almost a dozen similar competing products is a question of fact that should be addressed by the

1 trier of fact after sufficient discovery. *See Evans v. DSW, Inc.*, No. 16-cv-03791-JGB-SP, 2017

2 WL 7058233, at \*8 (C.D. Cal. Feb. 2, 2017) ("Accordingly, the Court will not delve into the issues

3 of fact going to the heart of the dispute on a motion to dismiss—namely, whether reasonable

4 consumers would find [the defendant's] reference prices to be misleading or deceptive.").

5 **B.     Defendant Disregards Context in Favor of Rigid Factor-Based Analysis**

6 Defendant dedicates at least half of its substantive argument to surveying product origin

7 cases. Mot. 9-15. It does this to set forth three factors it contends courts consider when examining

8 product origin cases: (a) the geographic specificity of the defendant's representations – such as a

9 map with an "X," a street address, or an invitation to visit a production facility; (b) the existence

10 (or not) of a disclosure expressly disclaiming the products' actual geographic origin; and (c)

11 whether the defendant's representations merely evoke the cuisine, culture, history, people, spirit,

12 or feeling of a country or a place, as in the phrase "A Taste of _____." *Id.*

13 To the extent Defendant is arguing, based on its descriptions of various product origin

14 cases, that specific geographic references beyond "HILO, HAWAII" (e.g., a map or a street

15 address) are required in this case, that its purported disclaimer automatically cures its

16 misrepresentations, or that a product cannot both evoke the spirit of a country *and* mislead

17 reasonable consumers—courts do not take such a rigid approach and have rejected such arguments.

18 *E.g.*, *de Dios Rodriguez v. Ole Mexican Foods Inc.*, No. 20-cv-02324-JGB-SP, 2021 WL 1731604,

19 at \*3-5 (C.D. Cal. Apr. 22, 2021); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 466-

20 69 (S.D.N.Y. 2020); *Shalikar v. Asahi Beer U.S.A., Inc.*, No. 17-cv-02713-JAK-JPR, 2017 WL

21 9362139, at \*7-8 (C.D. Cal. Oct. 16, 2017).

22 Defendant goes on to use its factors to isolate some representations at issue (but ignore

23 others), attempting to fit each into one of its three concocted categories. *See* Mot. 9-15. But

24 addressing each challenged representation in isolation is inappropriate, as courts "view misleading

25 advertisement claims in light of the context of the whole label or advertisement – 'the entire mosaic

26 should be viewed rather than each tile separately.'" *Hesse*, 463 F. Supp. 3d at 466; *see also*

27 *Williams*, 552 F.3d at 939 n.3 (explaining that while "'nutritious,' were it standing on its own,

28 could arguably constitute puffery . . . [t]his statement certainly contributes . . . to the deceptive

1   context of the packaging as a whole"); *Lima v. Gateway, Inc.*, 710 F. Supp. 2d 1000, 1007 (C.D.

2   Cal. 2010) (statements at issue could not "be considered in isolation because they contribute to the

3   deceptive context of the advertising as a whole").

4       In product origin cases specifically, the overarching principle is to view the advertising in

5   its totality. *E.g.*, *Reed v. Gen. Mills, Inc.*, No. 19-cv-00005-JCC, 2019 WL 2475706, at \*4-5 (W.D.

6   Wash. June 13, 2019) (looking at "Cascadian Farm" brand name in "light of the corresponding

7   Skagit Valley emblem" because "the Court is skeptical that each allegedly deceptive feature [about

8   product origin] should be analyzed in isolation"); *Broomfield v. Craft Brew All., Inc.*, No. 17-cv-

9   01027-BLF, 2017 WL 3838453, at \*7 (N.D. Cal. Sept. 1, 2017) (looking at product origin

10   representations "together in context"); *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333,

11   1342 (S.D. Fla. 2014) (assessing challenged product origin representations together).

12       Thus, Defendant should not be permitted to divide and conquer Plaintiffs' allegations by

13   isolating the representations and having the Court examine them in a vacuum.  Rather, they should

14   be viewed as a whole, which in this case, shows that reasonable consumers could be misled.

15           **i.**    **Context Requires Evaluating the Product among Its Many "Copycats"**

16       The Complaint provides a brief history of the "Hawaiian Sweet Roll," tracing its origins to

17   "traditional Portuguese Sweet Bread."  Compl. ¶ 1.  These rolls were "commercialized and

18   introduced to the 'mainland' United States by Defendant and [have] been known as Hawaiian Rolls

19   ever since."  *Id.* at ¶ 11.  The Product was easily commoditized, which means other companies sell

20   virtually the same product, at lower prices.  *See id.* at ¶¶ 12, 57-58.  The competitive context of

21   Plaintiffs' purchases, including the many similar Hawaiian sweet roll products, is crucial because

22   it shows the representations at issue, including especially "HILO, HAWAII" and "EST. 1950,"

23   serve to differentiate Defendant's Product from its competitors.

24       The labels of all ten alleged competing products contain the words "Sweet" and

25   "Hawaiian" and trade dress including floral patterns, with orange or pink colors.  Compl. ¶ 12.

26   Seven are described as "Rolls," two as "Buns" (a synonym for rolls), while the Pillsbury product

27   appears to be a frozen croissant ("Crescent[s]").  *See id.* (providing labels for rolls sold by "Rainbo,

28   Sam's Choice (Walmart), Ball Park Brand, Alpha Packing, Aldi, Sara Lee, Sister Schubert's,

1   Alpine Valley Organic, Safeway Signature Select, and Pillsbury.").

2   In deciding whether to purchase one of the numerous "copycat" products *or* Defendant's

3   Product, Plaintiffs' sought "what they perceive[d] to be authentic products, particularly those

4   perceived to be authentically associated with a specific place, such as Hawaii for Defendant's

5   Hawaiian Sweet Rolls." Compl. ¶ 21. Plaintiffs "did not think that any of the other (i.e., non-

6   King's) Hawaiian sweet rolls were made in Hawaii." *Id.* at ¶ 14. Of the ten similar product labels,

7   none of them make any references to Hawaii beyond the term "Hawaiian," alongside vague Hawaii

8   imagery of leis, flowers, and a statue, unlike Defendant's Product label, which prominently states

9   "HILO, HAWAII" and "EST. 1950." *Id.* at ¶ 25. Further, while Defendant cannot reasonably

10   "object to any of the [copycat] companies selling Hawaiian rolls because its success has made the

11   term 'Hawaiian Roll' a commonly accepted generic name" for this type of food, it has "zealously

12   sought to prevent other companies from marketing 'Hawaiian Rolls' with trade dress that allegedly

13   infringes its trademarked orange floral packaging design." *Id.* at ¶¶ 15-16.

14           ii.    **The Front Label Representations at Issue Distinguish Defendant's**

15                  **Product from Otherwise Identical Competitors**

16   To distinguish its Product from the dozens of imitators, Defendant's labeling and marketing

17   is directed to the "many consumers, [for whom] authenticity has overtaken quality as the prevailing

18   purchasing criterion." Compl. ¶ 20. The result of the distinguishing front label statements—

19   especially "EST. 1950" and "HILO, HAWAII"—is that the "impression received by consumers is

20   that since 1950, the Product has been made in Hilo, Hawaii." *Id.* at ¶ 30. Consumers, including

21   Plaintiffs, "expect[ed] Defendant's Hawaiian Sweet Rolls to be made in Hawaii and contain the

22   unique Hawaiian sweet bread ingredients, including honey and pineapple juice." *Id.* at ¶ 22.

23   Defendant's "check-the-box" approach to certain factors that were relevant in some

24   product origin cases disregards the overall context. For example, Defendant asserts that "the mere

25   use of a geographic reference, including a reference to the *company's historical origin*, does not

26   convey a representation about a *product's current origin*." Mot. 9-10.

27   However, numerous courts have concluded that representations of a product or company's

28   origins could plausibly mislead consumers about the immediate origin of a product, even where

1   the labeling lacks an affirmative statement such as "Made in _____."  *E.g.*, *Shalikar*, 2017 WL

2   9362139, at *3 (holding that Japanese phrases, including the Japanese "Asahi" brand name and

3   Japanese script, could plausibly mislead consumers into believing the product was made in Japan);

4   *Wasser v. All Mkt., Inc.*, No. 16-cv-21238, 2017 WL 11139701, at *4-5 (S.D. Fla. Nov. 13, 2017)

5   (finding that reasonable consumers could be misled by the use of the phrase "Born in Brazil" in

6   "conjunction with [defendant's] association of [the product] with Brazil," which according to

7   plaintiffs' complaint included a label that mimics the colors of the Brazilian flag).

8          In *Hesse*, the court considered a box of Godiva Chocolates with the statement "Belgium

9   1926" on the front, *Hesse*, 463 F. Supp. 3d at 460, which is virtually identical to Defendant's

10  statements of "HILO, HAWAII" and "EST. 1950," Compl. ¶ 25.  The defendant in *Hesse* made

11  the same argument King's Hawaiian makes, "noting that [Godiva] was founded in Belgium in the

12  year 1926, and thus arguing that the representation is a 'factually accurate phrase that imparts an

13  unambiguous and historically accurate message."  *Hesse*, 463 F. Supp. 3d at 467.  The court

14  rejected the argument because an "equally, if not more, plausible inference" was that the phrase

15  represented "*both* the provenance of the company . . . that its chocolates continue to be

16  manufactured there." *Id.*  The Court should reach the same result here.

17         Deeming the front label statements of "EST. 1950" and "HILO, HAWAII" analogous to

18  "Paris" and "Depuis 1747" on the front of the Maille mustard in *Culver v. Unilever United States,*

19  *Inc.*, No. 19-cv-09263-GW-RAO, 2021 WL 2943937 (C.D. Cal. June 14, 2021), Defendant urges

20  this Court to apply similar reasoning and grant dismissal. Mot. 9-10.  The comparison with *Culver*

21  is inapposite for multiple reasons.

22         First, there were no allegations that a dozen other companies sold products identified as

23  "Maille mustard," such that a reference to geographical heritage and provenance caused it to stand

24  out from "copycat" products.  *See generally Culver*, 2021 WL 2943937.  Here, Plaintiffs identify

25  ten identical products, all with very similar names, trade dress, and colors.  Furthermore, just as

26  "Swiss Army Knife" does not promise a knife made in Switzerland, Plaintiffs acknowledge that

27  "the term 'Hawaiian Rolls' by itself, does not denote a roll made in Hawaii any more than a 'Moon

28  Pie' can claim to have been baked on the moon."  Compl. ¶ 27; *see also Forschner Group, Inc. v.*

1    *Arrow Trading Co., Inc.*, 30 F.3d 348, 355 (2d Cir. 1994).  In other words, "Hawaiian Rolls" and

2    "Swiss Army Knife" are "commonly accepted generic name[s] to refer" to a class of particular

3    products.  *See* Compl. ¶ 16.  Thus, Defendant's highlighting of its origin in "HILO, HAWAII" is

4    of greater significance, distinguishing its Product from its commoditized competitors through an

5    appeal to authenticity, such that Plaintiffs purchased "King's Original Hawaiian Sweet Rolls

6    instead of other Hawaiian sweet rolls because they believed that, unlike the other brands of

7    Hawaiian sweet rolls, King's Hawaiian Sweet Rolls were made in Hawaii."  *Id.* at ¶ 49.

8           Second, the origin representations in *Culver*, such as "Maille 1747" and "Paris," were part

9    of duly registered and authorized trademarks.  *Culver*, 2021 WL 2943937, at *8 (taking judicial

10   notice that defendant was "the owner of the word mark 'Maille 1747 QueMaille,'" and that it

11   "cannot be doubted that Defendant has the right to utilize its trademarks and other authorized

12   words which correctly indicate that the Products belong to the Maille brand").  In contrast,

13   Defendant has offered no trademark registrations covering "HILO, HAWAII," "EST. 1950," or

14   any other representation at issue.

15          Third, the court in *Culver* reasoned that the defendant "[sold] a number of mustard varieties

16   some of which *are made in France*."  *Culver*, 2021 WL 2943937, at *8 (emphasis added).  Here,

17   it cannot be disputed that none of Defendant's Products are presently made in Hawaii.

18          Fourth, the court in *Culver* reasoned that consumers would not have the exhaustive

19   knowledge of the history of Maille mustard which was described in the complaint, such that the

20   "1747" and geographical references would have any meaning to them.  *Id.* at *7 (incorporating

21   earlier order of January 21, 2021); Civil Minute Order at 16 n.21, *Culver v. Unilever United States,*

22   *Inc.*, No. 2:19-cv-09263-GW-RAO (C.D. Cal. Jan. 21, 2021), ECF No. 36 (attached to the

23   accompanying Declaration of George V. Granade as Exhibit A).  In contrast, Plaintiffs here need

24   not have any detailed knowledge of the history of King's Hawaiian to ascribe meaning to "EST.

25   1950" and "HILO, HAWAII."  Instead, the relevance of these statements is that they distinguish

26   Defendant's Products from numerous otherwise identical competitors.  Compl. ¶¶ 13-14, 49-50.

27          Defendant's reliance on *Dumas v. Diageo PLC* to discount the significance of the front

28   label reference to "HILO, HAWAII," fares no better.  Mot. 10.  In *Dumas*, the plaintiff alleged the

representations on Red Stripe Beer were misleading because it was not actually brewed in Jamaica. *Dumas v. Diageo PLC*, No. 15-cv-1681-BTM-BLM, 2016 WL 1367511, at *1 (S.D. Cal. Apr. 6, 2016). However, the beer was described as "Jamaican Style Lager," and the word "Style" was determinative. *Id.* at *4 ("Clearly, 'Jamaican' modifies the word 'Style' not 'Lager.' The very fact that the word 'style' is used indicates that the product is not from Jamaica."). Had the plaintiff in *Dumas* been presented with six other brands, all declaring themselves to be "Jamaican Lager," with only defendant's Red Stripe's label stating, "MONTEGO BAY, JAMAICA" and "EST. 1928," Defendant's reliance on *Dumas* would be creditable.

### iii. Plaintiffs' Theory Does Not Rely on "Evocative" Hawaiian Imagery

Continuing in its rigid, formulaic approach, Defendant mischaracterizes the Complaint, claiming Plaintiffs allege its "Hawaiian imagery . . . convey[s] Hawaiian manufacture," which it argues is insufficient in this Circuit to state a claim. Mot. 10. This is the opposite of what Plaintiffs alleged. According to the Complaint, "[n]umerous companies sell Hawaiian sweet bread and even emulate Defendant's trade dress and packaging," including but not limited to "Rainbo, Sam's Choice (Walmart), Ball Park Brand, Alpha Packing, Aldi, Sara Lee, Sister Schubert's, Alpine Valley Organic, Safeway Signature Select, and Pillsbury." Compl. ¶ 12. However, Plaintiffs allege they believed that *only* King's Hawaiian sweet rolls were made in Hawaii. *Id.* at ¶ 14. Plaintiffs understood that the word "Hawaiian" referred to the name of the food and was part of "the name of the company." *Id.* at ¶¶ 27-28. What sets Defendant's Product apart is that the "front label prominently states 'HILO, HAWAII' inside a logo shaped like a (pineapple) crown, 'ORIGINAL HAWAIIAN SWEET ROLLS,' and 'EST. 1950.'" *Id.* at ¶ 29.

### iv. Defendant's Website and Float Representations Further the Deception Created by the Front Label

Like in *Hesse*, where the court found that the defendant's statement, "Delicious *Belgian* chocolates brought to you," in "social-media advertising" further supported the plaintiff's reliance on the front label statement "Belgium 1926," *Hesse*, 463 F. Supp. 3d at 467, Plaintiffs have further supported their claims by highlighting Defendant's website's promise of "FREE standard mainland shipping" to "anywhere in the mainland United States" (the "mainland claims"), along

1    with "its connection with Hawaii through a float in the Macy's Thanksgiving Day Parade dubbed

2    'The Aloha Spirit,'" Compl. ¶¶ 32-33, 40.

3            Defendant derides the mainland claims as "cherry-pick[ing] references," Mot. 14, even

4    though these statements appeared in large font on the main pages of its site, Decl. Orzano Supp.

5    Mot. Dismiss, Ex. G, at 74 of 76, ECF No. 17-2.  If the court in *Hesse* could rely on social media

6    postings, this Court can rely on Defendant's website, which is considered a company's most

7    important way of communicating with customers.

8            Instead of explaining why the mainland claims do not mislead consumers, Defendant

9    repeats the refrain that its website "does not contain any representation that the Product is made in

10   Hawaii." Mot. 14-15.  However, contrary to Defendant's argument, for the "mainland" shipping

11   references to not represent the Product was shipped from—and thus, made in—Hawaii, consumers

12   would be required to suspend their everyday, commonsense knowledge that "mainland" refers to

13   the continental United States.  Compl. ¶ 35.

14           While Defendant's position is that "EST. 1950" and "HILO, HAWAII" refer to the

15   company's origins, "an equally, if not more, plausible inference is that the phrase represents *both*

16   the provenance of the company . . . and a representation that its [Products] continue to be

17   manufactured there." *Hesse*, 463 F. Supp. 3d at 467.  And under Ninth Circuit precedent, when

18   "there are two alternative explanations . . . plaintiff's complaint survives a motion to dismiss . . .

19   [unless] defendant's plausible alternative explanation is so convincing that plaintiff's explanation

20   is implausible," *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)—and, here, it is not.

21           **C.    The Back Label Disclosure Fails to Cure the Misleading Front Label Claims**

22           Defendant argues that any misconception held by Plaintiffs with respect to where the

23   Product is made, and the ingredients used, would be cured by turning it over to identify the location

24   of its main office and the ingredient list.  Mot. 11-12.  The Court should reject this argument.

25           First, these disclosures are only on the back of the Product.  As the Ninth Circuit makes

26   clear, disclosures on a product's back label do not cure misleading representations on the front

27   label because a reasonable consumer is not "expected to look beyond misleading representations

28   on the front of the box to discover the truth" in fine print on the back.  *Williams*, 552 F.3d at 939.

1    Rather, consumers rightfully expect that representations on the front label will only be confirmed

2    by information in other areas of the label.  *Id.* at 939-40; *see also Jou v. Kimberly-Clark Corp.*,

3    No. 13-cv-03075-JSC, 2013 WL 6491158, at *9 (N.D. Cal. Dec. 10, 2013) (holding that under

4    *Williams*, a "[d]efendant cannot rely on disclosures on the back or side panels of the packaging to

5    contend that any misrepresentation on the front of the packaging is excused").

6         Recent and compelling authority supports Plaintiffs' position that the effect of Defendant's

7    fine print disclosure of its company headquarters "cannot be determined as a matter of law on the

8    present record."  *de Dios Rodriguez*, 2021 WL 1731604, at *5 (denying motion to dismiss where

9    representations on tortillas included "A Taste of Mexico!" and a Mexican flag, notwithstanding

10   that "the Products include disclosures in the back of the label that the tortillas are 'Made in the

11   U.S.A.' and manufactured in Norcross, GA"); *see also Shalikar*, 2017 WL 9362139, at *8

12   (refusing to consider the effect of geographical disclosures on the front labeling of purportedly

13   Japanese beer products, holding that "[t]he effect of the disclosures cannot be determined as a

14   matter of law on the present record").

15        Second, Defendant's reliance on a trio of product origin cases in support of its position that

16   the back label remedies the front label deception is misplaced for several reasons.  *See* Mot. 11-12

17   (citing *Dumas*, 2016 WL 1367511, *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386

18   (E.D.N.Y. 2017), and *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666 (E.D.N.Y. 2017)).

19         First, the disclosure on "the bottom of the packaging" in *Dumas* was not critical to the

20   court's ruling, because the word "style" in "Jamaican Style Lager" "indicates that the product is

21   not from Jamaica."  *Dumas*, 2016 WL 1367511, at *4.  It was not necessary to look elsewhere to

22   "dispel" the deception since consumers know this term "means that the food or drink is prepared

23   in a fashion that is similar to or reminiscent of that used in the identified geographic area."  *Id.*

24        Second, in *Bowring* and *Nelson*, the disclosures were clearly visible to consumers.

25   *Bowring*, 234 F. Supp. 3d at 391-92 (explaining that the Japanese representations were "clearly

26   qualified by the disclaimer" which "appears in contrasting, visible font, and states in clear language

27   where the product is produced"); *Nelson*, 246 F. Supp. 3d at 674 (explaining that the disclosure

28   was in "close proximity" to the purportedly misleading representations, distinguishing *Williams*).

1          Furthermore, both *Bowring* and *Nelson* were decided before *Mantikas v. Kellogg Co.*,

2    where the Second Circuit adopted the Ninth Circuit's longstanding principle that "[r]easonable

3    consumers should [not] be expected to look beyond misleading representations on the front of the

4    box to discover the truth from the ingredient list in small print on the side of the box." *Mantikas*,

5    910 F.3d at 637 (quoting *Williams*, 552 F.3d at 939).

6          Here, Defendant's purported disclosures are in fine print on the back of the Product, and

7    are anything but close to the front label statements, unlike in *Nelson* and *Bowring*. Furthermore,

8    the Second Circuit now takes the well-established *Williams* approach in the Ninth Circuit. Thus,

9    the reasoning set forth in *Nelson* and *Bowring* is both distinguishable and no longer appropriate.

10         Third, Plaintiffs never allege they reviewed the back label in making their purchases and

11   have challenged the front label statements as misleading, reinforced by the website statements.

12   While Defendant contends that "[i]f Plaintiffs viewed the website, Compl. ¶ 51, they also viewed

13   King's Hawaiian's accurate statements regarding manufacture," Mot. 15, they were not obligated

14   to read the entire website to discover the Product is not made in Hawaii. *Williams*, 552 F.3d at

15   939. Further, of the 12 pages Defendant filed with its motion that show the website, the production

16   locations are disclosed only once. *See* Decl. Orzano, Ex. G, at 69-70 of 76, ECF No. 17-2.

17         Fourth, contrary to Defendant's argument, Mot. 11-12, the back label statement,

18   "Manufactured by: King's Hawaiian Bakery West, Inc., 19161 Harborgate Way, Torrance, CA

19   90501," is insufficient to tell consumers where the Product is *made*, Compl. ¶¶ 44-45, 44 n.11.

20         Finally, Defendant's reliance on *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8,

21   21 (N.D. Cal. 2020), is misplaced. *See* Mot. 14. In *Cheslow*, the plaintiff alleged the defendant's

22   "Premium Baking Chips" and "Classic White Chips" were deceptively labeled because it was

23   expected they contained white chocolate, when they did not. *Cheslow*, 445 F. Supp. 3d at 12.

24   Citing *Cheslow*, Defendant argues that where there is no misrepresentation to dispel, and the

25   consumer alleges an idiosyncratic understanding of the product labeling at issue, the consumer is

26   not free to disregard the label's fine print. Mot. 14. *Cheslow* is inapposite because Plaintiffs have

27   plausibly alleged the statements at issue, including "HILO, HAWAII" and "EST. 1950," Compl.

28   ¶¶ 25-26, 29, are likely to deceive a reasonable consumer into believing the Product is made in

1   Hawaii, especially viewed in context amongst the labels of the Product's many imitators and in

2   light of Defendant's "mainland" website statements, *id.* at ¶¶ 12, 32-39, 51.

3   **D.      Plaintiffs' Expectations for the Product Were Reasonable**

4          Without support, Defendant contends the Complaint "does not plausibly allege that the

5   current place of baking of the Product dictates its 'authenticity' in the minds of reasonable

6   consumers."  Mot. 12.  Plaintiffs, however, allege "[c]onsumers often pay a price premium for

7   what they perceive to be authentic products, particularly those perceived to be authentically

8   associated with a specific place, such as Hawaii for Defendant's Hawaiian Sweet Rolls," Compl.

9   ¶ 21, expecting they "contain the unique Hawaiian sweet bread ingredients, including honey and

10  pineapple juice," *id.* at ¶ 22.  The Court should accept these allegations as true and construe them

11  in the light most favorable to Plaintiffs.  *Ariix, LLC*, 985 F.3d at 1114.  Furthermore, contrary to

12  Defendant's argument, nowhere does the Complaint allege that if Defendant "baked its Product in

13  Hawaii it would not be a King's Hawaiian Original Sweet Roll but instead would be a form of

14  Portuguese sweet bread that was made in the 1800s by Portuguese immigrants to Hawaii using

15  ingredients King's Hawaiian never included in its Product."  *See* Mot. 13.  This argument appears

16  to be intentionally illogical and intended to discredit the Complaint's supporting facts.

17         Contrary to Defendant's argument, Mot. 12-13, expecting Defendant's Hawaiian rolls to

18  be made with traditional Hawaiian ingredients in traditional Hawaiian methods based on

19  representations including "HILO, HAWAII," "EST. 1950," "ORIGINAL HAWAIIAN SWEET

20  ROLLS," "KING'S HAWAIIAN," and a three-point pineapple crown, Compl. ¶¶ 25-26, 29, is no

21  different than expecting a beer to be made with "high quality water" *from Japan* based on

22  representations including the name "Asahi," Japanese Katakana script, and Japanese Kanji

23  characters, *Shalikar*, 2017 WL 9362139, at *3).  Nor is it different than expecting a beer to be

24  brewed using artesian water *from the Olympia area of Washington* based on "the product name

25  'The Original Olympia Beer' coupled with the slogan 'It's the Water' and an image of a cascading

26  waterfall."  *Peacock v. Pabst Brewing Co., LLC*, 491 F. Supp. 3d 713, 717 (E.D. Cal. 2020).

27  King's Hawaiian's argument that the Product did not "claim to include honey, pineapple, or any

28  other purportedly 'traditional' ingredient" or be "baked in a *forno*," Mot. 13, disregards the content

of the representations themselves as well as their alleged context, which the Court should accept as the truth on this motion. *Ariix, LLC*, 985 F.3d at 1114; *Khoja*, 899 F.3d at 1003.  That context involves Defendant, the market leader, amongst a dozen other brands, none of which represent they have a connection to Hawaii like Defendant's Product does. *E.g.*, Compl. ¶¶ 12-15, 17, 25-26.  In this circumstance, it is wholly reasonable for Plaintiffs and consumers to expect the traditional ingredients and production methods, especially given the higher price. *See id.* at ¶ 21.

## II.     The Complaint Satisfies Federal Rule of Civil Procedure 9(b)

The Court should reject Defendant's argument that the Complaint fails to meet Rule 9(b)'s particularity requirements. *See* Mot. 16-18.  Plaintiffs have satisfied Rule 9(b) because they have adequately pled the who, what, when, where, and how of the fraud and have thereby given Defendant notice of the particular deceptive conduct at issue so it can defend against the charge. *Moore*, 966 F.3d at 1019; *Sandoval*, 145 F. Supp. 3d at 997.

"Many courts in California have applied a relatively straightforward test for the application of Rule 9(b) to label-based fraud claims," under which "[t]he 'who' are the defendants; the 'what' are their allegedly misleading claims; the 'when' is the proposed class period, during which those claims were made; the 'where' is the offending label; and the 'how' is the plaintiff's explanation why the defendant's claims are misleading." *In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, No. MDL 13-2438 PSG PLA, 2014 WL 5311272, at *17 (C.D. Cal. Sept. 4, 2014); *see also Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-WHO, 2013 WL 5407039, at *3 (N.D. Cal. Sept. 25, 2013); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1126 (N.D. Cal. 2010) (Rule 9(b) is met where plaintiffs identify "the particular statements they allege are misleading, the basis for that contention, where those statements appear on the product packaging, and the relevant time period in which the statements were used").  The Complaint easily meets these requirements.

**Who:** The "who" of the fraud is Defendant.

**What:** The Complaint adequately alleges the "what" of the fraud (i) by alleging Defendant deceptively labeled the Product using the words "HILO, HAWAII," "EST. 1950," "ORIGINAL HAWAIIAN SWEET ROLLS," and "KING'S HAWAIIAN," the Hawaiian trade dress of orange tropical flowers, and the three-point pineapple crown logo, and (ii) by including images of the

1  labeling at issue.  *E.g.*, Compl. ¶¶ 25-26, 29; *see also Hall v. Diamond Foods, Inc.*, No. 14-cv-

2  02148-MMC, 2014 WL 5364122, at *2 (N.D. Cal. Oct. 21, 2014) (plaintiff sufficiently alleged the

3  "what" by attaching photograph of portion of packaging he relied on).

4           Defendant argues Plaintiffs "fail to set forth specifically *what* products are at issue and

5  *what* products they purchased."  Mot. 16.  The Complaint, however, specifically identifies the

6  Product at issue by naming it, "Original Hawaiian Sweet Rolls," and by including several images

7  of its label.  Compl. ¶¶ 25, 29; *id.* at ¶ 32 (images of 4-count and 12-count versions of the Product).

8  The Complaint also specifically alleges Plaintiff Hodges purchased the Product, *id.* at ¶ 60, and

9  Plaintiff Colamarino purchased the Product, *id.* at ¶ 64.  These allegations and images are sufficient

10  to place Defendant on notice of the Product at issue, "Original Hawaiian Sweet Rolls" (which

11  comes in packages including various numbers of "Original Hawaiian Sweet Rolls").  *Moore v.*

12  *GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 20-cv-09077-JSW, 2021 WL

13  3524047, at *7 (N.D. Cal. Aug. 6, 2021) (plaintiff sufficiently alleged which products she

14  purchased by providing images of the products in her complaint, which showed the product

15  labeling including the challenged representations); *see also* Decl. Orzano, Ex. G, at 74-75 of 76,

16  ECF No. 17-2 (showing that the Product comes in configurations including 12-count 2-pack; twin

17  pack; 4-count; 24-count; and 18-count).  Tellingly, Defendant does not contend that it sells other

18  "Original Hawaiian Sweet Rolls" that it could somehow be confusing with the Product that

19  Plaintiffs have clearly identified and imaged.

20           Defendant also argues Plaintiffs fail to adequately allege what representations "***in addition***

21  ***to the Product label*** they viewed prior to purchasing the Products."  Mot. 16 (emphasis added).

22  Defendant argues Plaintiffs allege they saw "selectively shown portions of King's Hawaiian's

23  website reproduced in the Complaint" but are "avoid[ing] the fact that they were almost certainly

24  exposed to (or deliberately avoided) King's Hawaiian's website disclosure of its address in

25  California and shift of production to California."  *Id.* at 16-17.

26           These arguments are speculative and run afoul of governing Ninth Circuit precedent, under

27  which reasonable consumers are not expected to look beyond misleading representations on the

28  front label to discover the truth buried in other locations.  *Williams*, 552 F.3d at 939.  First and

most importantly, ***Defendant concedes Plaintiffs have sufficiently alleged they saw the Product labels***, and Plaintiffs do not need to allege they saw misrepresentations anywhere else to satisfy Rule 9(b). *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-cv-04387-PJH, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011) ("The 'where' is on the ice cream package labels."). The Court should reject Defendant's argument for this reason alone.

Furthermore, the allegations regarding non-label misrepresentations, including the allegations about the representations on Defendant's website, Compl. ¶¶ 32-39, and the allegations about Defendant's promotion of its connection with Hawaii through a float in the Macy's Thanksgiving Day Parade, *id.* at ¶¶ 40-41, are included in the Complaint to provide context to the misrepresentations contained on the Product labels, and they are appropriately pled facts upon which the Court can rely in determining if Defendant's representations are materially misleading to a reasonable consumer. Defendant overstates its supposed "website disclosure" of its shift of production to California and thereby tries to improperly inject facts into the Complaint that are not pled. Mot. 16-17. Contrary to Defendant's suggestion, nowhere in the Complaint does it allege that either Plaintiff ever saw any such "website disclosure," and the Complaint's allegation that "Plaintiffs viewed the website representations" does not lead to a different conclusion. *See* Compl. ¶ 51. At this stage, the Court should accept the Complaint's allegations regarding what Plaintiffs did (and did not) see as true, construe them in the light most favorable to Plaintiffs, and draw all reasonable inferences in Plaintiffs' favor. *Ariix, LLC*, 985 F.3d at 1114; *Khoja*, 899 F.3d at 1003. And under *Williams*, Plaintiffs should not be expected to dig through Defendant's website to discover the truth when Defendant misrepresents where the Products are made prominently on the front labeling of the Products. *Williams*, 552 F.3d at 939.

**Where:** The Complaint sufficiently alleges the "where" of the fraud by alleging Defendant uniformly deceptively labeled the Product on the front of the Product packaging, using the words "HILO, HAWAII," "EST. 1950," "ORIGINAL HAWAIIAN SWEET ROLLS," and "KING'S HAWAIIAN," the Hawaiian trade dress of orange tropical flowers, and the three-point pineapple crown logo. Compl. ¶¶ 25-26, 29; *Gasser v. Kiss My Face, LLC*, No. 17-cv-01675-JSC, 2017 WL 4773426, at *6 (N.D. Cal. Oct. 23, 2017) ("Plaintiffs identified what statements were misleading

and where they were located—the statement '100% natural mineral defense' is located on the front label of the products."); *Astiana*, 2011 WL 2111796, at \*6.  Defendant argues Plaintiffs do not identify all of the stores at which they bought the Product. Mot. 17.  The Court should reject this argument because it misconstrues the law.  The relevant "where" is the front label of the Product. *Gasser*, 2017 WL 4773426, at \*6. It does not matter which stores Plaintiffs purchased the Product at.  *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1099 (C.D. Cal. 2012) ("The court agrees with plaintiffs that Rule 9(b) does not require that they allege the specific store in which they purchased [the product at issue] . . . .").

**When:** The Complaint also sufficiently alleges the "when" of the fraud by alleging both Plaintiffs purchased the Product between June 3, 2015, and the present, which is the relevant class period, Compl. ¶ 83; specifically, Ms. Hodges purchased the Product "between February and March 2021," *id.* at ¶ 60, and Ms. Colamarino purchased it "in late December 2020," *id.* at ¶ 64. *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1034 (N.D. Cal. 2016) (holding that the "when" prong was satisfied because plaintiffs alleged they purchased product at issue "within the relevant class period"); *Ang*, 2013 WL 5407039, at \*3 (holding that the "when" was "timeframe for the class allegations").  Defendant argues the Complaint does not sufficiently allege the "when" because it does not "specify exactly when [Plaintiffs] purchased the specific Products."  Mot. 17. Here, again, Defendant's argument is contrary to the law.  Plaintiffs' allegations that they purchased the Products within the relevant class period, including "between February and March 2021" and "in late December 2020," are sufficient to plead the "when" of the fraud. *In re ConAgra Foods Inc.*, 908 F. Supp. 2d at 1100 ("Plaintiffs, moreover, provide at least some information about the frequency with which they viewed the allegedly misleading statements.  Given this level of detail, the court does not believe that requiring that plaintiffs allege specific dates on which they saw the representations is necessary or realistic." (footnote omitted)).

**How:** The Complaint also adequately sets forth "how" and "why" the representations at issue are false and misleading.  Plaintiffs allege the representations at issue ("HILO, HAWAII," "EST. 1950," "KING'S HAWAIIAN," and "ORIGINAL HAWAIIAN SWEET ROLLS," the Hawaiian trade dress of orange tropical flowers, and the three-point pineapple crown logo, Compl.

¶¶ 25-26, 29) are deceptive because they indicate to reasonable consumers that the Products are made in Hawaii with Hawaiian ingredients, when, in fact, the Products are not made in Hawaii and, instead, are made in California.  *E.g.*, *id.* at ¶¶ 23-24, 29-31, 42-43, 46-53, 62, 66, 69, 112, 119-20.  Plaintiffs also allege they were induced to purchase the Products at a premium price based on the foregoing representations on the front labels of the Products.  *Id.* at ¶¶ 53-58, 102-03.  These allegations are more than sufficient to plead the "how" and "why" of the fraud under Rule 9(b).  *Strumlauf*, 192 F. Supp. 3d at 1035 ("how" prong satisfied where plaintiff alleged what made the representations misleading and that plaintiff paid a premium for the products based on the misrepresentations).

Defendant quibbles with isolated paragraphs of the Complaint taken out of context, suggesting there are inconsistencies in how Plaintiffs have articulated their claims.  Mot. 17-18.  Not so.  Reading the Complaint in full and taking all allegations together, it plainly alleges the "how" and "why" of the fraud by alleging the representations at issue lead reasonable consumers to believe the Product is made in Hawaii with Hawaiian ingredients, when in fact it is made in California (and not Hawaii).  *E.g.*, Compl. ¶¶ 23-24, 29-31, 42-43, 46-53, 62, 66, 69, 112, 119-20.  The Complaint sufficiently pleads the "how" of the fraud, and Defendant has not shown otherwise.

For all the foregoing reasons, Plaintiffs have sufficiently provided Defendant with the who, what, when, where, and how of their claims against it.  This level of detail allows Defendant to "prepare an adequate answer from the allegations."  *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986).  Accordingly, the Court should hold the Complaint satisfies the particularity requirements of Rule 9(b).

## III.     The Complaint States a Claim for Unjust Enrichment

Defendant asks the Court to dismiss Plaintiffs' unjust enrichment claim, contending based on earlier arguments in its brief that Plaintiffs have not adequately alleged actionable conduct sufficient to support an unjust enrichment claim.  Mot. 18.  For the reasons above, the Court should reject this argument and hold Plaintiffs' claims of deceptive conduct are plausible.  *See supra* § I.

Defendant also contends the Court should dismiss Plaintiffs' unjust enrichment claim because it is duplicative of their other claims.  Mot. 18.  The Court should reject this argument, as

1  Federal Rule of Civil Procedure 8(d)(2) allows Plaintiffs to plead in the alternative.  *Astiana v.*

2  *Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015).  According to the Ninth Circuit,

3  even if an unjust enrichment claim under California law is "duplicative of or superfluous to" a

4  plaintiff's other claims, "this is not grounds for dismissal."  *Id.* at 762; *see also Warner v. StarKist*

5  *Co.*, No. 1:18-cv-00406-GLS-ATB, 2019 WL 1332573, at *3 (N.D.N.Y. Mar. 25, 2019) (holding

6  unjust enrichment claim did not duplicate New York consumer protection claims because "[t]he

7  elements for an unjust enrichment claim are distinct from the elements for GBL claims under §§

8  349 and 350"); *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-cv-04427-NGG-ST, 2017 WL

9  5201079, at *15 (E.D.N.Y. Nov. 9, 2017) (denying motion to dismiss unjust enrichment claim in

10  light of "the liberal pleading standard" that "expressly contemplates pleading in the alternative").

11  **IV.  Plaintiff Hodges Has Given Adequate Notice under the CLRA**

12  For the reasons below, the Court should reject Defendant's arguments that the CLRA letter

13  Ms. Hodges sent Defendant did not provide adequate notice of her CLRA claim.  *See* Mot. 18-20.

14  First, Defendant argues Ms. Hodges' letter did not provide notice of each particular Product

15  for which she is seeking damages.  Mot. 19.  Defendant is wrong because Ms. Hodges' letter states

16  that she purchased Defendant's "Hawaiian Rolls."  Decl. Donvito Supp. Def.'s Mot. Dismiss Pls.'

17  Compl., Ex. B, at 6 of 13, ECF No. 17-1 ("Hodges CLRA Notice").  That is plainly the same

18  product as the "Original Hawaiian Sweet Rolls" Product that is at issue in the Complaint, as

19  Defendant admitted in its response to Ms. Hodges' letter.  Decl. Granade, Ex. B (filed concurrently

20  herewith) (stating "we understand [Plaintiff Hodges' letter's reference to 'Hawaiian Rolls'] to be

21  a reference to King's Hawaiian Original Sweet Rolls").  While Defendant protests that Ms.

22  Hodges' statement is too vague, it tellingly does not explain what other product she could possibly

23  have been referring to.  *See Grimm v. APN Inc.*, No. 8:17-cv-00356-JVS-JCG, 2017 WL 6398148,

24  at *4 (C.D. Cal. Aug. 31, 2017) (holding CLRA notice adequately identified product at issue).

25  Second, Defendant argues Plaintiff Hodges' letter did not provide it with notice of each

26  alleged misrepresentation at issue.  Mot. 19-20.  Ms. Hodges' letter, however, sufficiently

27  identified the factual basis for her claim: the representations on the front label of Defendant's

28  Product, including "HILO, HAWAII" and "EST. 1950," indicate the Product is made in Hawaii,

when in fact it is not made in Hawaii and is, instead, made in California.  Hodges CLRA Notice at 6-7 of 13, ECF No. 17-1.  The case of *Grimm v. APN Inc.* is directly on point.  In *Grimm*, the plaintiff's CLRA notice letter alleged the defendant misrepresented its products as "natural" but her pleading brought a CLRA damages claim alleging the defendant misrepresented its products using both the terms "natural" and "no artificial preservatives."  *Grimm*, 2017 WL 6398148, at *4. The defendant sought dismissal of the CLRA damages claim regarding the term "no artificial preservatives" because it was not included in the letter.  *Id.*  The court rejected the defendant's argument, holding that the plaintiff gave the defendant "adequate notice of that claim when she alleged that [the defendant] engaged in unfair business practices by 'advertising, marketing, and selling of its Products as natural when in fact they contain chemicals and artificial and/or synthetic ingredients, includ[ing] [various specific ingredients]."  *Id.*  According to the court, "[t]his was also sufficient to give [the defendant] notice that its use of the term 'no artificial preservatives' allegedly violated § 1770."  *Id.*  Here as in *Grimm*, Ms. Hodges' CLRA letter details the gravamen of her claim sufficiently to provide Defendant with notice that the similar representations "KING'S HAWAIIAN" and "ORIGINAL HAWAIIAN SWEET ROLLS," the Hawaiian trade dress of orange tropical flowers, and the three-point pineapple crown logo are also at issue.

Third, Defendant argues Plaintiff Hodges' letter did not allege which particular provisions of California Civil Code section 1770 that Defendant violated.  Mot. 20.  However, as the Court pointed out in *Stickrath v. Globalstar, Inc.*, "Section 1782(a)(1) requires notice to include the particular alleged violations of Section 1770,' but there is no case law describing how 'particular' the notice must be."  *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 1001 (N.D. Cal. 2007). "[T]he purpose of the requirement is clear: 'to give the manufacturer or vendor sufficient notice of alleged defects to permit appropriate corrections or replacements.'"  *Id.* at 1001-02.  Here as in *Stickrath*, Plaintiff's CLRA letter satisfies the notice requirement because it makes plain the gravamen of Plaintiff's claim, enabling Defendant to make appropriate corrections or replacements.  *Id.*  Nothing further is required.  *Vassigh v. Bai Brands LLC*, No. 14-cv-05127-HSG, 2015 WL 4238886, at *8 (N.D. Cal. July 13, 2015) ("[The CLRA] letter describes the problem (the allegedly unauthorized nutrient content claims on Bai5 Antioxidant Infusion

1    beverages) and demands that Bai remedy the violations.  No more is required."); *Colucci v.*

2    *ZonePerfect Nutrition Co.*, No. 12-2907-SC, 2012 WL 6737800, at *9 (N.D. Cal. Dec. 28, 2012)

3    (CLRA notice was adequate where it "notified Defendant of the alleged defect, which was the use

4    of allegedly synthetic or artificial ingredients in Defendant's nutrition bars"); *In re Easysaver*

5    *Rewards Litig.*, 737 F. Supp. 2d 1159, 1178-79 (S.D. Cal. 2010) (rejecting defendant's argument

6    that the plaintiffs' CLRA letter "did not give notice of two particular sub-sections of the statute"

7    that were cited in the complaint because the letter "explicitly allege[d] violations of [the] CLRA").

8         *Tribendis v. Life Care Centers of America, Inc.* is directly on point.  In *Tribendis*, the

9    defendants, like King's Hawaiian here, cited *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285 (S.D.

10    Cal. 2003), among other cases, and argued the plaintiffs' CLRA notice letter was "not specific

11    enough to constitute adequate notice."  *Tribendis v. Life Care Centers of Am., Inc.*, No. 2:14-cv-

12    02765-DMG-PJW, 2014 WL 12639322, at *5 (C.D. Cal. Sept. 19, 2014).  The court rejected the

13    defendants' argument, holding the plaintiffs' had given the defendants "sufficient notice" under

14    the CLRA and the defendants had presented "no persuasive authority supporting a specificity

15    requirement for [CLRA] notice."  *Id.* at *5-6.  The court distinguished *Von Grabe* on the ground

16    that in *Von Grabe*, the notice was "untimely and made no mention of any specific violations of

17    Section 1770."  *Id.* at *5.  In contrast, the court held that the notice before it "[did] allege specific

18    violations of Section 1770."  *Id.* at *6.  Specifically, the letter explained that the defendants'

19    "skilled nursing facilities (and the named directors of those facilities) have repeatedly failed to

20    meet the 3.2 hour NHPPD minimum requirements."  *Id.*  It also asserted the defendants "failed to

21    disclose this violation, and that their misleading deceptive conduct violated the CLRA."  *Id.*  Like

22    Plaintiff Hodges' CLRA notice here, the letter in *Tribendis* cited the CLRA by citing "California

23    Civil Code 1750, et seq."  *Compare* Decl. Granade, Ex. C, at Ex. 1 p. 4-6 (filed concurrently

24    herewith) (CLRA notice from *Tribendis*),[1] *with* Hodges CLRA Notice at 6-7 of 13, ECF No. 17-

25    1.  The court concluded by citing *Stickrath* for the proposition that the purpose of the notice

26    requirement is to permit appropriate corrections or replacements and holding the plaintiff's letter

27

28    _____

[1] Plaintiffs have separately requested that the Court take judicial notice of the CLRA notice letter that the court analyzed in *Tribendis*.  *See* Pls.' Req. Judical Notice (filed concurrently herewith).

1    provided such notice.  *Tribendis*, 2014 WL 12639322, at *6.  Plaintiff Hodges' CLRA notice here

2    is materially identical to the notice in *Tribendis*, and the Court should reach the same result.

3         In the event the Court finds Plaintiff Hodges' letter does not meet the CLRA's notice

4    requirement (which it should not), Ms. Hodges respectfully requests leave to amend, as her

5    Complaint has now provided Defendant with more than 30 days of clear notice of the alleged

6    CLRA violations, and courts grant leave to amend CLRA claims "with liberality."  *Prescott v.*

7    *Bayer HealthCare LLC*, No. 20-cv-00102-NC, 2020 WL 4430958, at *9 (N.D. Cal. July 31, 2020);

8    *see also In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 950 (N.D. Ill. 2016) (failure of CLRA notice

9    is curable and dismissal with prejudice is not required); *Oxina v. Lands' End, Inc.*, No. 14-CV-

10   2577-MMA NLS, 2015 WL 4272058, at *3 (S.D. Cal. June 19, 2015) (same); *Morgan v. AT&T*

11   *Wireless Servs., Inc.*, 99 Cal. Rptr. 3d 768, 789-90 (2009) (same).

12   **V.    Plaintiffs Have Standing to Seek Injunctive Relief**

13        King's Hawaiian argues Plaintiffs lack standing to seek injunctive relief because they "are

14   fully aware of both where the Product is baked and its ingredients and, to the extent they did not

15   know before, where to look on the packaging to confirm where the Product is baked and its

16   ingredients," such that "[t]here is no danger whatsoever that Plaintiffs will be deceived by the

17   reference to the Company's founding again."  Mot. 20-21.  King's Hawaiian is wrong.

18        The Ninth Circuit's governing decision in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d

19   956 (9th Cir. 2018), rejects King's Hawaiian's argument.  In *Davidson*, the Ninth Circuit held that:

20        a previously deceived consumer may have standing to seek an injunction against
          false advertising or labeling, even though the consumer now knows or suspects that
21        the advertising was false at the time of the original purchase, because the consumer
          may suffer an "actual and imminent, not conjectural or hypothetical" threat of
22        future harm.  ***Knowledge that the advertisement or label was false in the past does
          not equate to knowledge that it will remain false in the future.***
23

24   *Id.* at 969 (emphasis added).  Similarly, in *Lilly v. Jamba Juice Co.*, which the Ninth Circuit cited

25   with approval in *Davidson*, 889 F.3d at 970, the court held:

26        When a consumer discovers that a representation about a product is false, ***she
          doesn't know that another, later representation by the same manufacturer is also***
27        ***false***.  She just doesn't know whether or not it's true.  A material representation
          injures the consumer not only when it is untrue, but also when it is *unclear* whether
28        or not is true.

---

1  *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 WL 1248027, at *3 (N.D. Cal. Mar. 18,

2  2015) (first emphasis added).  The Court should follow *Davidson* and *Lilly* and reject Defendant's

3  argument that Plaintiffs now somehow *know* whether Defendant's Product labels will be false in

4  the future and so somehow will never again be deceived.  And contrary to Defendant's argument,

5  the onus is not on Plaintiffs to examine the back of the Product labels in the future to try to

6  determine whether Defendant's front-label representations regarding geographic origin are in fact

7  deceptive.  *Tucker v. Post Consumer Brands, LLC*, No. 19-cv-03993-YGR, 2020 WL 1929368, at

8  *6 (N.D. Cal. Apr. 21, 2020) ("Absent injunctive relief, plaintiff would not know whether honey

9  is in fact a significant sweetener in defendant's product based on the front of the cereal box.  Nor

10  is the onus on plaintiff to consult the ingredient list to try to discern this fact.").

11         Furthermore, the Court should hold that a plausible inference arises from the Complaint

12  that Plaintiffs could find themselves in the same situation again and be similarly harmed by

13  uncertainty over whether the Defendant's representations regarding the geographic origin of the

14  Product on the front labeling are true.  *Haas v. Travelex Ins. Servs. Inc.*, No. 2:20-cv-06171-ODW-

15  PLA, 2021 WL 3682309, at *3 (C.D. Cal. Aug. 19, 2021).  A plausible inference of actual and

16  imminent threat of future injury to Plaintiffs arises from the Complaint because Plaintiffs (i) have

17  already "voted with [their] wallet[s]" and are therefore "the *most* likely to be injured again in the

18  absence of an injunction, not the least," *Lilly*, 2015 WL 1248027, at *4, and (ii) will be unable to

19  trust Defendant's labeling the next time they encounter it, as it will be unclear to them whether its

20  representations are in fact truthful, *Davidson*, 889 F.3d at 969; *Lilly*, 2015 WL 1248027, at *3.

21  Plaintiffs' inability to rely on the representations regarding the Product's geographic origin on the

22  Product's front labeling constitutes an ongoing injury for which they may seek injunctive relief.

23  *Haas*, 2021 WL 3682309, at *3; *Tucker*, 2020 WL 1929368, at *6.  For all these reasons, the Court

24  should hold Plaintiffs have Article III standing to seek injunctive relief.

25  **VI.    The Court Should Not Deny Leave to Amend**

26         If the Court grants any part of Defendant's motion, Plaintiffs respectfully request leave to

27  amend.  Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give

28  leave when justice so requires."  FED. R. CIV. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178,

1   182 (1962).   In the Ninth Circuit, "[t]his policy is 'to be applied with extreme liberality,'"

2   *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).   Furthermore, unless

3   the party opposing amendment carries its burden to show prejudice, or makes a strong showing of

4   bad faith, undue delay, futility, or prior amendments, "there exists a *presumption* under Rule 15(a)

5   in favor of granting leave to amend."   *LeMoon v. California Forensic Med. Grp., Inc.*, No. 20-cv-

6   02552-PJH, 2021 WL 2817165, at *3 (N.D. Cal. July 7, 2021) (Hamilton, J.).

7            Here, if the Court grants any part of Defendant's motion (which it should not), it should

8   follow the presumption under Rule 15(a) in favor of granting leave to amend because (i) Defendant

9   has not shown it would suffer any prejudice from amendment at this early stage, and (ii) Defendant

10  has made no showing of bad faith, undue delay, or futility, and the Complaint has not been

11  previously amended.   *LeMoon*, 2021 WL 2817165, at *3.

12           Defendant argues the Court should dismiss Plaintiffs' claim without leave to amend

13  because Robert Galinsky brought similar claims under New York law against Defendant in New

14  York federal court, amended his pleading once, and then dismissed his claims before the court

15  entered any ruling on the sufficiency of his pleading.   Mot. 21.   According to Defendant, due to

16  Mr. Galinsky's claims, "[t]his is now Plaintiffs' counsel's third attempt at drafting a cognizable

17  action for consumer fraud for the same products, to no avail."   *Id.*   Defendant's argument distorts

18  the facts.   Plaintiffs have never amended their pleading and have not yet had any opportunity to

19  review and address a ruling by the Court as to its sufficiency.   Defendant does not and cannot

20  contend it has suffered any prejudice *in this case* on account of claims in a separate, dismissed

21  action, and the allegations in Mr. Galinsky's pleadings have no bearing on Plaintiffs' Complaint.

22  If the Court dismisses any of Plaintiffs' claims, it should grant leave to amend.

23                                          **CONCLUSION**

24           For the foregoing reasons, the Court should deny Defendant's motion to dismiss in full.

25  Date: September 17, 2021                        Respectfully submitted,

26                                                  **REESE LLP**

27                                          By:   */s/ George V. Granade*
                                                  George V. Granade (State Bar No. 316050)
28                                                *ggranade@reesellp.com*

8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

**REESE LLP**
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan (admitted *pro hac vice*)
*spencer@spencersheehan.com*
60 Cuttermill Road, Suite 409
Great Neck, New York 11021
Telephone: (516) 268-7080
Facsimile: (516) 234-7800

*Counsel for Plaintiffs Dieisha Hodges and
Roxanne Colamarino and the Proposed Class*