1
2
3
4               UNITED STATES DISTRICT COURT
5              NORTHERN DISTRICT OF CALIFORNIA
6
7   DIEISHA HODGES, et al.,
                                          Case No.  21-cv-04541-PJH
8              Plaintiffs,

9        v.                               **ORDER GRANTING DEFENDANT'S**
                                          **MOTION TO DISMISS**
10   KING'S HAWAIIAN BAKERY WEST,
    INC.,                                 Re: Dkt. No. 17
11
               Defendant.
12
13

14        Defendant's motion to dismiss plaintiff's complaint came on for hearing before this

15   court on October 28, 2021.  Plaintiffs appeared through their counsel, George Granade.

16   Defendant appeared through its counsel, Joseph Orzano and Matthew Catalano.  Having

17   read the papers filed by the parties and carefully considered their arguments and the

18   relevant legal authority, and good cause appearing, the court hereby GRANTS

19   defendant's motion, for the following reasons.

20   **I.     BACKGROUND**

21        This is a product labeling case, brought as a putative class action, arising out of

22   defendant King's Hawaiian's Original Hawaiian Sweet Rolls Product.  Plaintiffs' central

23   allegation is that the packaging and marketing of the sweet rolls would lead a reasonable

24   consumer to believe that the Product is currently produced in Hawaii using traditional

25   ingredients, and because the Product is instead manufactured in California, without some

26   of the traditional ingredients, its packaging and marketing are misleading.

27        Plaintiff Dieisha Hodges is a resident of Oakland, California, and a sophisticated

28   food consumer.  Compl. ¶ 59.  Plaintiff Roxanne Colamarino is a resident of Maspeth,

United States District Court
Northern District of California

1    Queens County, New York, and a sophisticated food consumer.  Compl. ¶ 63.  Defendant

2    King's Hawaiian Bakery West, Inc. ("King's Hawaiian" or the "company") makes Original

3    Hawaiian Sweet Rolls ("sweet rolls" or "Product").  King's Hawaiian was established in

4    Hilo, Hawaii, in 1950.  Compl. ¶ 29.  The sweet rolls are now made in Torrance,

5    California, where King's Hawaiian also maintains its principal place of business.  Compl.

6    ¶¶ 44, 70.

7         Plaintiffs "prefer to consume foods which have enduring and authentic connections

8    to a place associated with them, such as Italian tomatoes and Florida oranges."  Compl.

9    ¶ 67.  Plaintiffs "recognize the value of certain products to specific geographic areas and

10   choose to reward this authenticity with their purchases and money."  Compl. ¶ 68.

11   Plaintiffs purchased the Product in-person at grocery stores on one or possibly more

12   occasions, and presumably consumed and enjoyed them.  Compl. ¶¶ 62, 65.  Plaintiffs

13   believed the Product is currently made in Hawaii.  Compl. ¶ 53.  Further, plaintiffs

14   believed that the Product contained "Hawaiian ingredients," including pineapple juice,

15   honey, and sugar.  Compl. ¶ 62.

16        Plaintiffs allege that the phrase "EST. 1950 HILO, HAWAII" inside a three-point

17   crown evocative of a pineapple's crown on the front of the Product's packaging conveys

18   the impression that the sweet rolls are currently made in Hawaii.  Compl. ¶¶ 29, 30.

19   Plaintiffs acknowledge that neither the brand name ("King's Hawaiian") nor the Product

20   name ("Hawaiian Rolls") convey a message about the Product's origin.  Compl. ¶¶ 27-28

21   ("Reasonable consumers understand that the term 'Hawaiian Rolls' by itself, does not

22   denote a roll made in Hawaii any more than a 'Moon Pie' can claim to have been baked

23   on the moon. Moreover, reasonable consumers understand that 'King's Hawaiian' refers

24   to the name of the company.").  Plaintiffs additionally acknowledge that use of other

25   Hawaiian-themed trade dress does not convey a product-origin claim, either.  Compl. ¶

26   12 ("Numerous companies sell Hawaiian sweet bread and even emulate defendant's

27   trade dress and packaging."); Compl. ¶ 14 ("Plaintiffs did not think any of the other (i.e.,

28   non-King's) Hawaiian sweet rolls were made in Hawaii."). Plaintiffs further admit that

United States District Court
Northern District of California

2

King's Hawaiian discloses on the packaging where the Product is baked (its California baking facility).  Compl. ¶ 44 (admitting that the packaging discloses the name and address of the manufacturer in Torrance, California).

Plaintiffs allege that reasonable consumers expect that this Product is not only made in Hawaii, but that it is special and authentic—a form of Portuguese sweet bread that was made by Portuguese immigrants in Hawaii in the 1800s—and that it would necessarily contain traditional ingredients sourced from Hawaii, including pineapple juice, sugar and honey.  Compl. ¶¶ 2-11, 24.  Plaintiffs acknowledge that King's Hawaiian includes on the Product labels a list of ingredients, which does not include pineapple juice or honey (and accurately discloses sugar).  Compl. ¶ 44.

Plaintiffs also take issue with King's Hawaiian's use of the term "mainland" and evocative terms like "Aloha" in connection with its description of the company shipping policy on its website.  Compl. ¶¶ 32, 33.  Plaintiffs allege the King's Hawaiian Macy's Thanksgiving Day Parade float further conveys that the Product is made in Hawaii through similar claims and imagery that is also evocative of Hawaii, such as the float's name, "The Aloha Spirit."  Compl. ¶ 40.

Plaintiffs seek to represent the following two classes (together, the "class"):

> All persons residing in California who purchased the Product for personal or household consumption and use since June 3, 2015 ("the California Class"); and
> All persons residing in New York who purchased the Product for personal or household consumption and use since June 3, 2015 ("the New York Class").

Compl. ¶ 83.  On behalf of the class, plaintiffs seek declaratory relief, injunctive relief, compensatory damages, equitable monetary relief, and punitive damages.  Compl. at pp. 23-24.

Plaintiffs' complaint, filed on June 11, 2021, alleges the following causes of action: (1) unlawful conduct in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. (the "UCL") (California putative class); (2) unfair and fraudulent conduct in violation of the UCL (California putative class); (3) false advertising in violation

United States District Court
Northern District of California

1   of Cal. Bus. & Prof. Code § 17500 et seq., (the "FAL") (California putative class);

2   (4) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et

3   seq. (the "CLRA") (California putative class); (5) violations of New York Gen. Bus. Law

4   ("GBL") §§ 349 and 350 (New York putative class); and (6) unjust enrichment (California

5   and New York putative classes).

6         Defendant filed the instant motion in response to the complaint.  Dkt. 17.

7   Defendant avers that plaintiffs lack standing to pursue injunctive relief.  Defendant asks

8   the court to dismiss the complaint in its entirety because plaintiffs do not meet the

9   "reasonable consumer" standard.  Defendant additionally asks the court to dismiss the

10  case with prejudice because plaintiffs' counsel has unsuccessfully pursued this case

11  through different plaintiffs in different jurisdictions across the country, and, in essence,

12  plaintiffs' counsel should not get another bite at the apple.  These issues are discussed in

13  turn.

14  **II.      DISCUSSION**

15        **A.      Requests for Judicial Notice**

16        Both sides submit requests for judicial notice along with their briefs, asking the

17  court to take notice of materials outside the complaint to decide this motion to dismiss.

18  Review on a motion to dismiss is generally limited to the contents of the complaint, but

19  the court can also consider a document on which the complaint relies if the document is

20  central to the claims asserted in the complaint and no party questions the authenticity of

21  the document.  See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007).  The court may

22  consider matters that are properly the subject of judicial notice, Knievel v. ESPN, 393

23  F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th

24  Cir. 2001), and documents referenced extensively in the complaint and documents that

25  form the basis of the plaintiffs' claims.  See No. 84 Emp'r-Teamster Jt. Council Pension

26  Tr. Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

27        Federal Rule of Evidence 201 permits a court to notice a fact if it is "not subject to

28  reasonable dispute."  Fed. R. Evid. 201(b).  A fact is "not subject to reasonable dispute" if

United States District Court
Northern District of California

4

it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1)-(2).  Under the incorporation by reference doctrine, the court has discretion to consider on a motion to dismiss "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."  Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1160 (9th Cir. 2012); see also United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

Here, defendant requests that the court take notice of a few items in support of its motion.  Defendant first requests the court judicially notice a high-resolution image of the Product's packaging.  Dkt. 17-1 at 3-4.  Defendant additionally requests the court judicially notice four letters dated March 22, 2021, sent from plaintiff's counsel to defendant.  Dkt. 17-1 at 6-13.  Plaintiffs do not oppose these requests and do not dispute the authenticity of the documents.  The Product's packaging forms the basis of plaintiffs' complaint.  The packaging of defendant's Product is publicly available.  Moreover, the letter notice is referred to in the complaint.  Compl. ¶ 129.  For these reasons, the court takes judicial notice of the Product's packaging and the letter notice under the incorporation by reference doctrine.  The court grants defendant's request for judicial notice of exhibits A and B to the Donvito declaration.  Dkt. 17-1 at 3-4, 6-13.

Next, defendant requests the court judicially notice excerpts of the King's Hawaiian website last accessed on or around August 5, 2021, incorporated by reference into the complaint.  See Compl. ¶¶ 32-33, 51.  Websites and their contents may be proper subjects for judicial notice.  See Threshold Enterprises Ltd. v. Pressed Juicery, Inc., 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) (collecting cases); Wible v. Aetna Life Ins. Co., 374 F. Supp. 2d 956, 965 (C.D. Cal. 2005) (recognizing that "websites and their contents may be proper subjects for judicial notice" where party "supplied the court with hard copies of the actual web pages of which they sought to have the court take judicial

notice"). For these reasons, the court takes judicial notice of the webpage under the incorporation by reference doctrine. The court grants defendant's request for judicial notice of exhibit G to the Orzano declaration. Dkt. 17-2 at 64-76.

Defendant additionally requests the court judicially notice the papers from a similar case filed by plaintiffs' counsel representing one Robert Galinsky of Yonkers, New York. Dkt. 17-2. That case, No. 20-cv-10931-KMK in the U.S. District Court for the Southern District of New York, involved similar consumer claims to those at issue here, including allegations of negligent misrepresentation, fraud, and violations of New York's consumer protection statute, all based on King's Hawaiian's allegedly misleading labelling. The court may take judicial notice of court documents already in the public record and documents filed in other courts. However, these documents do not serve as a basis for deciding the motion now at issue. The court denies as moot defendant's request to take notice of these court documents.

Plaintiffs submit their own request for judicial notice along with their opposition brief. Plaintiffs request the court judicially notice a Civil Minute Order, Culver v. Unilever United States, Inc., No. 2:19-cv-09263-GW-RAO (C.D. Cal. Jan. 21, 2021), ECF No. 36. Plaintiffs additionally request the court judicially notice the Declaration of Padraic Glaspy in Support of Defendant Life Care Center of America, Inc.'s Motion to Dismiss and Motion to Strike Plaintiff's First Amended Complaint, Tribendis v. Life Care Centers of Am., Inc., No. 2:14-cv-02765-DMG-PJW (C.D. Cal. June 27, 2014), ECF No. 25-1, including Exhibit 1 and Exhibit 2 thereto. The court may take judicial notice of court documents already in the public record and documents filed in other courts. Thus, Exhibits A and C are the proper subject of judicial notice and the court grants plaintiffs' request for judicial notice of these exhibits. Dkt. 22-2, Dkt. 22-4.

Plaintiffs further request that the court take judicial notice of a copy of a letter dated April 15, 2021, from Defendant's counsel to Plaintiffs' counsel. This letter is Defendant's response to Plaintiff Hodges' CLRA notice letter, and it is specifically referred to the Complaint. Compl. ¶ 132. Defendant does not oppose this request and

United States District Court
Northern District of California

1   does not dispute the authenticity of the letter.  For these reasons, the court finds it

2   appropriate to take judicial notice of the letter under the incorporation by reference

3   doctrine.  The court grants plaintiffs' request for judicial notice of exhibit B to the Granade

4   declaration.  Dkt. 22-3.

5          Along with its reply brief, defendant submits an additional request for judicial

6   notice.  The exhibits appended to the second Orzano declaration (Dkt. 23-1), including a

7   copy of a news article (Dkt. 23-2), a copy of a letter and its exhibits submitted in another

8   Southern District of New York case (Dkt. 23-3), a copy of defendant's trademark of its

9   logo (Dkt. 23-4), and a separate letter from plaintiff's counsel giving CLRA notice on

10  behalf of another consumer (Dkt. 23-5), are all unnecessary for the court's consideration

11  of the motion at issue.  These documents may be judicially noticeable as they are not

12  subject to reasonable dispute, but none are incorporated into the complaint by reference

13  and most appear targeted at deprecating plaintiffs' counsel.  The court denies as moot

14  defendant's request to take notice of these documents.

15         **B.     Lack of Article III Standing – Rule 12(b)(1)**

16         Federal courts may adjudicate only actual cases or controversies, see U.S. Const.

17  Art. III, § 2, and may not render advisory opinions as to what the law ought to be or

18  affecting a dispute that has not yet arisen.  Aetna Life Ins. Co. of Hartford, Conn. v.

19  Haworth, 300 U.S. 227, 240 (1937).  Because Article III's "standing" and "ripeness"

20  requirements limit subject matter jurisdiction, they are properly challenged under a

21  Federal Rule of Civil Procedure 12(b)(1) motion to dismiss.  Chandler v. State Farm Mut.

22  Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010); see also Bender v. Williamsport Area

23  Sch. Dist., 475 U.S. 534, 541 (1986).

24         To establish injury in fact to support standing, a plaintiff must show that he/she

25  suffered "an invasion of a legally protected interest" that is "concrete and particularized"

26  and "actual or imminent, not conjectural or hypothetical."  Spokeo Inc. v. Robins, 136

27  S.Ct. 1540, 1548 (2016) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560

28  (1992)).  Further, because plaintiffs seek injunctive relief, they must identify an "imminent

United States District Court
Northern District of California

United States District Court
Northern District of California

1    prospect of future injury." Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC, 753 F.3d

2    862, 868 (9th Cir. 2014). Such a future injury must be "certainly impending to constitute

3    injury in fact," and allegations of "possible future injury" are not sufficient. Clapper v.

4    Amnesty Int'l USA, 133 S.Ct. 1138, 1147 (2013).

5         Here, defendant challenges subject matter jurisdiction on the basis of standing.

6    Defendant argues that plaintiffs lack standing to seek injunctive relief premised on the

7    threat of repeated injury, given that plaintiffs are now aware of the Torrance production of

8    the sweet rolls and their ingredients. The Ninth Circuit has addressed almost this exact

9    point:

10              We hold that a previously deceived consumer may have
                standing to seek an injunction against false advertising or
11              labeling, even though the consumer now knows or suspects
                that the advertising was false at the time of the original
12              purchase, because the consumer may suffer an "actual and
                imminent, not conjectural or hypothetical" threat of future harm.
13              [] Knowledge that the advertisement or label was false in the
                past does not equate to knowledge that it will remain false in
14              the future.

15   Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 969 (9th Cir. 2018) (internal citation

16   omitted). Contrary to King's Hawaiian's argument, knowledge that the company's

17   marketing was deceptive in the past does not equate to knowledge that it will remain

18   false in the future. Therefore, if the court finds that plaintiffs make out a plausible claim of

19   deceptive marketing, plaintiffs have standing to pursue injunctive relief.

20        **C.      Failure to State a Claim – Rules 12(b)(6) and 9(b)**

21             **1.      Legal Standard**

22        A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the

23   legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191,

24   1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that

25   a complaint include a "short and plain statement of the claim showing that the pleader is

26   entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule

27   12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient

28   facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th

1   Cir. 2013).

2         While the court is to accept as true all the factual allegations in the complaint,

3   legally conclusory statements, not supported by actual factual allegations, need not be

4   accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  The complaint must proffer

5   sufficient facts to state a claim for relief that is plausible on its face.  Bell Atl. Corp. v.

6   Twombly, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted).

7         "A claim has facial plausibility when the plaintiff pleads factual content that allows

8   the court to draw the reasonable inference that the defendant is liable for the misconduct

9   alleged."  Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not

10  permit the court to infer more than the mere possibility of misconduct, the complaint has

11  alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  Id. at 679.  Where

12  dismissal is warranted, it is generally without prejudice, unless it is clear the complaint

13  cannot be saved by any amendment.  Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir.

14  2005).

15        Because plaintiffs' claims sound in fraud, their complaint must also meet the

16  heightened pleading standard of Federal Rule of Civil Procedure 9(b).  See Kearns v.

17  Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires a party alleging

18  fraud or mistake to state with particularity the circumstances constituting fraud or mistake.

19  To satisfy this standard, the "complaint must identify the who, what, when, where, and

20  how of the misconduct charged, as well as what is false or misleading about the

21  purportedly fraudulent statement, and why it is false."  Salameh v. Tarsadia Hotel, 726

22  F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotation marks omitted).

23        **2.**      **Analysis**

24            **a.**      **Whether the Product Would Deceive a Reasonable**

25                      **Consumer**

26        Plaintiffs' first four causes of action are brought under California statutes: the

27  Unfair Competition Law ("UCL," two claims), the False Advertising Law ("FAL"), and the

28  Consumer Legal Remedies Act ("CLRA").  The CLRA prohibits "unfair methods of

United States District Court
Northern District of California

9

1    competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. The UCL

2    prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof.

3    Code § 17200. The FAL prohibits "any unfair, deceptive, untrue, or misleading

4    advertising." Williams v. Gerber Prod. Co., 552 F.3d 934, 938 (9th Cir. 2008) (citing Cal.

5    Bus. & Prof. Code § 17500) (internal quotation marks omitted).

6          The Ninth Circuit has explained that "these [three] California statutes are governed

7    by the 'reasonable consumer' test." Williams, 552 F.3d at 938 (quoting Freeman v. Time,

8    Inc., 68 F.3d 285, 289 (9th Cir. 1995)); accord Consumer Advocates v. Echostar Satellite

9    Corp., 113 Cal.App.4th 1351, 1360 (2003). "Under the reasonable consumer standard,

10   [plaintiffs] must show that members of the public are likely to be deceived." Williams, 552

11   F.3d 938. "The California Supreme Court has recognized that these laws prohibit not

12   only advertising which is false, but also advertising which[,] although true, is either

13   actually misleading or which has a capacity, likelihood or tendency to deceive or confuse

14   the public." Id. (internal quotation marks omitted) (quoting Kasky v. Nike, Inc., 27 Cal.4th

15   939, 951 (2002)). The reasonable consumer test requires more than a mere possibility

16   that defendant's Product "might conceivably be misunderstood by some few consumers

17   viewing it in an unreasonable manner." Lavie v. Procter & Gamble Co., 105 Cal.App.4th

18   496, 508 (2003). Rather, the test requires a probability "that a significant portion of the

19   general consuming public or of targeted consumers, acting reasonably in the

20   circumstances, could be misled." Id.

21         Courts considering the New York analogs to California's deceptive advertising

22   claims (New York G.B.L. §§ 349, 350, plaintiffs' fifth claim here) apply the same objective

23   assessment. Garadi v. Mars Wrigley Confectionery US, LLC, No. 119CV03209RJDST,

24   2021 WL 2843137, at *2 (E.D.N.Y. July 6, 2021) ("New York and California have adopted

25   an objective definition of deception under which the alleged act must be 'likely to mislead

26   [or deceive] a reasonable consumer acting reasonably under the circumstances.'"

27   (citation omitted)); see also Mantikas v. Kellogg Co., 910 F.3d 633, 637 (2d Cir. 2018).

28         Generally, "whether a reasonable consumer would be deceived . . . [is] a question

United States District Court
Northern District of California

1    of fact not amenable to determination on a motion to dismiss." <u>Ham v. Hain Celestial</u>

2    <u>Grp., Inc.</u>, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014); <u>see</u> <u>Reid v. Johnson & Johnson</u>,

3    780 F.3d 952, 958 (9th Cir. 2015). "However, in rare situations a court may determine,

4    as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not

5    plausible." <u>Ham</u>, 70 F. Supp. 3d at 1193.

6         Here, plaintiffs fail to show that members of the public are likely to be deceived by

7    defendant's packaging and marketing.

8         First, defendant's reference on its label to its Hawaiian founding does not lead a

9    reasonable consumer to believe that the Product is still made in Hawaii. As in <u>Culver</u>, the

10   court finds here that the mere use of a geographic reference, including a reference to the

11   company's historical origin, does not convey a representation about a product's current

12   origin. <u>See</u> <u>Culver v. Unilever United States, Inc.</u>, 2021 WL 2943937, at *7 (where

13   reference to the company's founding using "Paris" and "Depuis 1747" (since 1747) was

14   determined not to convey a message about the subject mustard's current place of

15   production). The label plainly states, "Est. 1950," and "Hilo, Hawaii," providing a

16   reference to the company's historical origin. This is insufficient to establish that the sweet

17   rolls are still produced in Hawaii. Contrary to plaintiffs' argument, the statement on the

18   back label of defendant's packaging, "Manufactured by: King's Hawaiian Bakery West,

19   Inc., 19161 Harborgate Way, Torrance, CA 90501," is plainly sufficient to tell consumers

20   where the sweet rolls are produced.

21        Second, plaintiffs fail to establish that reasonable consumers expect sweet rolls to

22   contain unique Hawaiian sweet bread ingredients, including honey and pineapple juice.

23   The production of sweet rolls is inapposite to the brewing of beer, where the location of

24   production was highly relevant to the quality of the product—the water sources at issue

25   make up over 90 percent of the end product. <u>Shalikar v. Asahi</u>, 2017 WL 9362139 (C.D.

26   Cal. Oct. 16, 2017) (finding plausible allegations of deception of a reasonable consumer,

27   but where plaintiff specifically alleged that product origin mattered to reasonable

28   consumers because Asahi no longer used higher quality Japanese water in product

made almost entirely of water after shifting production to Canada); Peacock v. Pabst Brewing Co., LLC, 491 F.Supp.3d 713 (E.D. Cal. 2020) (plaintiff plausibly alleged a reasonable consumer would likely be deceived that Olympia beer still used water from the Olympia area water where the can included "The Original Olympia Beer," an image depicting waterfalls at the site of company's original brewery and also the statement "It's the Water").  King's Hawaiian, in contrast, never claimed the traditional production methods and ingredients that plaintiffs unreasonably attribute to the company's sweet rolls.  All references to pineapple, honey, production by 19th Century Portuguese immigrants, forno, and "local kiawe wood" come from plaintiffs' complaint, not from any public representations that plaintiffs have attributed to defendant.  Compl. ¶¶ 2-11.  It is inappropriate and unreasonable to infer that defendant's sweet rolls include such allegedly traditional ingredients based solely on selective review of the Product's packaging.

Plaintiff, following the reasoning in Williams, argues that the ingredient list on the back label of the sweet rolls package cannot cure the misleading statements on the front of the package.  In Williams, the Ninth Circuit determined that a reasonable consumer could be deceived by images on a fruit snack label depicting a number of different fruits, "potentially suggesting (falsely) that those fruits or their juices are contained in the product."  Williams, 552 F.3d at 939.  The appellate panel rejected the argument that a misrepresentation on the front of the package could be cured by a disclaimer on the back of the package, instead concluding "reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the package."  Id. at 939-40.

This case, however, does not involve any misrepresentation.  Review of the packaging does not include any images suggesting inclusion of honey or pineapple in the sweet rolls.  The King's Hawaiian brand name is displayed on the Product label within a crown-shaped logo that may fairly be described as pineapple-like, but plaintiffs do not argue anywhere that this shape serves as a basis for their belief that the Product would

12

include pineapple juice.  See Compl. ¶ 29.  Plaintiffs' complaint seems to suggest this is simply part of Hawaiian trade dress.  Compl. ¶¶ 12, 25.  The product label at issue contains no misleading words or images that are analogous to the pictures of fruit in Williams.  There are no words or images on the package label that would lead a reasonable consumer to believe that the sweet rolls were made in the allegedly traditional method or with the traditional ingredients.  Rather, the unobscured ingredient list is clear in its omission of pineapple and honey.  Where "there is no deceptive act to be dispelled and no other statement or other depiction that could mislead the reasonable consumer, then it is not plausible that a significant portion of the general consuming public could be deceived."  Ebner v. Fresh, Inc., 838 F.3d 958, 966 (9th Cir. 2016) (citing Williams, 552 F.3d at 936) (internal quotation mark omitted).  A reasonable consumer is not free to ignore the ingredient list on a food package.  Cheslow, 445 F. Supp. 3d at 20.  As a result, plaintiffs cannot state a claim under the reasonable consumer test.

Third, plaintiffs' references to defendant's marketing outside the product label, including the company website and the company's Macy's Day parade float, similarly do not mislead a reasonable consumer.  Plaintiffs are indeed "selectively blind" about the representations on the website, as defendant describes.  The company's description of "mainland shipping" is available on the same site that provides explicit statements about the company's transition of manufacturing from Hawaii to California decades ago, and the site additionally makes explicit statements that the company bakes its Sweet Rolls on the mainland, in California.  Moreover, plaintiffs acknowledge that the parade float only evokes the "spirit of Hawaii," which is the same non-misleading conduct of defendant's competitors.

In sum, the court finds that plaintiffs fail to state claims under the CLRA, UCL, and FAL, as well as their New York analogs.  The product label would not mislead a reasonable consumer.  Plaintiffs' first through fifth claims are dismissed on this basis.  Because the court determines the CLRA claim fails on this basis, the court does not reach the issue of the adequacy of the CLRA notice.

### b.    Sufficiency of pleading under Rule 9(b)

As noted above, to satisfy the heightened pleading standards of Rule 9(b), the "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." Salameh, 726 F.3d at 1133.

Plaintiffs aver that defendant represents its sweet rolls as produced in Hawaii, but they completely fail to specify where defendant makes such a misrepresentation.  They glean this impression from an assessment pieced together from a few different sources. The first source is the statement on the front of the package referencing the company's Hawaiian founding.  The second source is the reference to "mainland shipping" on the company's website, which consumers understand to be a term Hawaiians use to refer to the continental United States and from which consumers understand that the Product is shipped from (and made in) Hawaii.  Compl. ¶¶ 32, 33.  The third source is the King's Hawaiian Macy's Thanksgiving Day Parade float, which plaintiffs contend conveys that the Sweet Rolls are made in Hawaii because of imagery that is evocative of Hawaii, such as the float's name, "The Aloha Spirit."  Compl. ¶ 40.

As defendant highlights, plaintiffs do not specify that they even visited the company's website, and they do not specify that they saw the company's parade float.

Plaintiffs encourage the court to view defendant's advertising "in its totality," but they do not view the advertising in totality themselves.  They ignore the ingredient list that does not include pineapple and honey.  Compl. ¶ 44.  They ignore the company's address on the same package label.  Compl. ¶ 44.  They ignore the website's description and disclosure of California production and operations.  Dkt. 17-2 at 69, 72.  In this way, plaintiffs fail to describe the "how" of the allegedly fraudulent conduct by defendant.  They fail to plead how defendant's representations, considered in totality, mislead a reasonable consumer to believing the Product is made in Hawaii of allegedly traditional ingredients. Therefore, plaintiffs' complaint additionally fails to meet the heightened pleading standard under Rule 9(b), and all of plaintiffs' claims sounding in fraud are dismissed on this basis.

14

### c.   Unjust Enrichment

As to unjust enrichment, defendant argues that plaintiffs do not identify any independent theory of unjust enrichment that does not rise or fall with their statutory claims.  In Gudgel, 514 F. Supp. 3d at 1188, another product labeling case, the court dismissed plaintiff's unjust enrichment claim because she failed to identify an actionable deception in the context of the "reasonable consumer" test.  The court comes to the same result here.  Plaintiffs fail to identify an actionable deception under the reasonable consumer test.  Therefore, court dismisses plaintiffs' unjust enrichment claim.

### d.   Leave to Amend

If dismissal is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment.  Sparling, 411 F.3d at 1013.  "Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment."  Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008).

Defendant argues that plaintiffs should not get another bite at the apple—that plaintiffs' counsel have failed to move this case past the pleading stage in multiple fora, and they should thus be denied leave to amend.  For this premise, defendant appends documents from the case in the Southern District of New York brought by plaintiff Galinsky.  Though defendant demonizes plaintiffs' counsel, the plaintiffs in this case have nowhere pursued these claims against this defendant.  These plaintiffs have not failed to cure deficiencies by previous amendment.  It would be improper to so penalize these plaintiffs by denying leave to amend.

## III.   CONCLUSION

For the foregoing reasons, the court rules as follows.  The court GRANTS in part and DENIES in part defendant's requests for judicial notice as detailed above.  The court GRANTS in part and DENIES in part plaintiffs' request for judicial notice as detailed above.  The court GRANTS defendants' motion to dismiss plaintiff's complaint with leave to amend.  Plaintiffs shall have 28 days from the date of this order to file an amended complaint curing the deficiencies noted in this order.  No new claims or parties may be

added without leave of court or the agreement of all parties.  Upon the filing of any amended complaint, plaintiff must also file a redline clearly demarcating its changes from the existing complaint.

**IT IS SO ORDERED.**

Dated: November 8, 2021

_/s/ Phyllis J. Hamilton_
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
Northern District of California

16